## PRICE v. EDMONDS.

5-1980                               330 S. W. 2d 82

### Opinion delivered December 7, 1959.

[Rehearing denied January 11, 1960]

W. H. *Dillahunty, Hale & Fogleman,* for appellant.

*Fletcher Long,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellee, Edmonds, is a resident and taxpayer of the City of West Memphis, Arkansas, and pays electric and water rates to a distribution system there which the city owns and operates for distribution of electric power and water to its inhabitants. The ownership of the system is exclusive in the city by ordinance enacted in 1954. Appellants are the duly appointed and acting members of the utility commission and are charged with the operation of the electric power distribution system, the water works and sewer systems of West Memphis. It appears undisputed that some of the members of the commission have made contracts with concerns in which members of the commission have an interest. Appellee, Edmonds, brought the present action in which he sought a restraining order enjoining appellants, as the utility commission and as individual members, from entering into any type of contract, or making payments under any previous contracts, with concerns in which one or more of the commissioners may have an interest, and further sought permission to inspect the records and books of the utility district which he alleged had been denied him.

On a hearing for a temporary injunction, the trial court's "Order For Temporary Relief" contained, among others, the following recitals: "On the 30th day of June, 1959, the above entitled cause came on for a hearing upon the petition and prayer of the plaintiff for temporary relief in the following respects: (1) that the utility commissioners acting for the City of West Memphis, Arkansas, be enjoined and restrained from making and collecting rates for utilities; (2) that the utility commissioners aforesaid be enjoined and re-

strained from spending funds of the utility commission in connection with contracts with themselves or with companies in which a commissioner has a beneficial interest; and (3) that petitioner Cecil Edmonds, as a citizen and rate-payer, be allowed to examine any and all records of the aforesaid utility commission. * * * It is, * *` *, by the court CONSIDERED and ORDERED that (1) petitioner's prayer that the utility commissioners of West Memphis be enjoined and restrained from making and collecting utility rates should be and it is hereby denied; that (2) petitioner's prayer that the utility commission of West Memphis and each member thereof be enjoined and restrained from making contracts and spending commission funds with its own members and/or companies in which they have a beneficial interest should be and it is hereby granted; and that (3) petitioner's prayer that the utility commission be compelled to make all its records available to him for examination has been taken out of the jurisdiction of this court by a Mandate of the Supreme Court of Arkansas dated July 2, 1959.''

Appellant says, ''The only question now before this court is that of the propriety of the granting of the temporary injunction.''

On the record presented, we hold that the trial court correctly granted temporary injunctive relief and that there was no abuse of the court's discretion in so doing.

Here the facts are undisputed that appellants, while acting as the utility commissioners for West Memphis, were spending funds of the utility commission in connection with contracts with themselves or with companies in which a commissioner had a beneficial interest. In these circumstances, what we said in *Riggs* v. *Hill*, 201 Ark. 206, 144 S. W. 2d 26, applies with equal force here. ''The granting or refusing of injunctive relief rests within the judicial discretion of the trial court, and its action in the matter will be sustained on review by an appellate court, where the power has not been abused. Ordinarily, it is sufficient if a transaction is shown which makes a proper subject for investigation in a court of equity. The rule applies to the grant or denial of a

preliminary injunction, and to rulings on motion to dissolve the injunction. Such orders will not be disturbed on review unless they are contrary to some rule of equity, or the result of improvident exercise of judicial power." 28 Am. Jur., 500, 501.

We reaffirmed this holding in the more recent case of *Scrivner* v. *Portis Mercantile Company*, 220 Ark. 814, 250 S. W. 2d 119, in this language: "As to (c), an appeal may be taken from the issuance of a temporary injunction. Ark. Stats. 1947, Sec. 27-2102. But the granting of the order is a matter that lies within the chancellor's discretion. *Riggs* v. *Hill*, 201 Ark. 206, 144 S. W. 2d 26. By his pleadings Scrivner concedes that the State owns the land and that he is in effect a trespasser. The prosecuting attorney, pursuant to his authority to represent the State in civil actions (Secs. 24-101 and 24-103), asks that the trespass be enjoined *pendente lite*. The proof taken at the preliminary hearing sustains the view that Scrivner's possession is wrongful. There was no abuse of discretion in the issuance of the injunction."

On appellant's contention that Edmonds had no right to maintain the present suit against the commission, we hold that since the evidence shows that he was a citizen, property owner, taxpayer, rate-payer or "consumer", he did have the right to maintain the present suit. The Constitution of Arkansas, Article 16, Section 13, provides: "Any citizen of any * * * City * * * may institute suit in behalf of himself, and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever."

Many of our cases indicate that this section of the constitution was designed to prohibit the illegal expenditure of government funds before they occur. This right has been extended in suits brought against improvement districts by property owners residing therein. In the recent case of *Keenan* v. *Williams, Chancellor*, 225 Ark. 556, 283 S. W. 2d 688, there was at issue the misuse of district funds by the commissioners of a drainage district and complaint was brought by three landowners within the district. We there said: "It cannot be doubted that

these matters are within the jurisdiction of equity. The state's policy is declared by the constitution, which authorizes any citizen of a county, city, or town to institute suit to prevent the enforcement of illegal exactions. Art. 16, Sec. 13. Even though the constitution does not expressly refer to improvement districts it has been repeatedly held that, in harmony with the constitutional policy, equity has jurisdiction of suits to prevent the misapplication of improvement district funds. *Huddleston* v. *Coffman,* 90 Ark. 219, 118 S. W. 1010; *City of Bentonville* v. *Browne,* 108 Ark. 306, 158 S. W. 161; *Seitz* v. *Meriwether,* 114 Ark. 289, 169 S. W. 1175.''

In this connection we must not overlook what also appears to be the undisputed facts: (1) The ownership of the distribution system is in the City exclusively. (2) The funds collected from rates, subject to payment of debts and outstanding liens for bonded obligations, are public funds. (3) The directing body of the utility district, the commissioners, has authority originating exclusively in a grant from duly elected public officials, the city council. (4) Edmonds has a proprietary and pecuniary interest in the distribution system and in the funds of the district, and represents the class which owns the whole interest. subject only to payments already mentioned.

Ordinarily, as appellants contend, the utility commission would have been the proper party to institute this action; however, in the instant case the record shows that they took no action whatever until they were brought into court by appellee who charged them with having committed illegal and unlawful acts which they admitted to be true. In the case of *Seitz* v. *Meriwether,* 114 Ark. 289, in which the right of a taxpayer to sue was questioned, (an improvement district case which involved a municipal corporation and its inhabitants) we there said: ''A court of equity may, at the suit of property holders or taxable inhabitants of a municipal corporation, restrain the corporation and its officers from making an unauthorized appropriation of the corporate funds. This is so because the corporation holds its money for

the corporators, the inhabitants of the town or city, to be expended for legitimate corporate purposes, and a misappropriation of these funds is an injury to the taxpayer, for which no other remedy is so effectual or appropriate as an injunction.''

Yet it appears that they still contend that they have done no wrong officially or individually. In the circumstances, we hold, as above indicated, that appellee acted properly in bringing this suit since appellants, in effect, had declined to take action.

On the question of appellee's right to inspect the books and records of the commission, our governing rule is announced in 189 Ark. 914, 75 S. W. 2d 666, *City National Bank* v. *Wofford,* as follows: ''* * * a party to a pending action has no right to call for books, papers and documents as to his adversary merely for the purpose of entering into a 'fishing examination' of them. To authorize their production there must be a substantial showing that the book, paper or document sought for contains material evidence in support of the cause of action or defense of the party asking for it. A mere suspicion that it contains such evidence does not warrant an order for its production. The enactments upon the subject generally make it a condition that the books, *etc.,* required shall contain evidence relating to the merits of the case.

''Section 1393 of Elliott on Evidence provides: 'The fundamental requirement as to the sufficiency of the motion or petition is that it must be shown upon good and sufficient cause that the books, papers or documents sought to be produced or inspected contain evidence material and pertinent to the issues and on behalf of the applicant.

'' '* * * It is not sufficient to allege generally the materiality of the books or documents, as this would not only be the averment of a conclusion, but would permit the question of materiality to be decided by the applicant instead of by the court. Hence it is not sufficient to allege that such books or papers contain evidence

relative to the merits of the action, but it must be made to appear wherein such relation consists. In other words, the rule, as stated by the court is: It is well settled that an order for discovery and inspection will never be granted unless the necessity therefor is clearly shown.' ''

Accordingly, the decree is affirmed.

HARRIS, C. J., and McFADDIN, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. I am of the opinion that the temporary injunction should not have been issued because all of the proper parties were not before the court. Though the utility is operated by the Board, such operation is actually under the supervision of the City Council. The statute requires that the Board shall report to the Council "with reference to the conditions and affairs of the municipal plants under its control at such time and in such manner as the City Council may designate", and the Council has full authority to repeal or amend any ordinance which it has passed pursuant to Act 562 of 1953. This is not a taxpayer's suit because no tax monies are involved. Edmonds is simply a customer of the utility. I am strongly of the view that the city of West Memphis and the City Council are necessary parties in the case, and since they were not before the court, there was a defect of parties, and the prayer for injunction should not have been granted.

ED. F. McFADDIN, Associate Justice, dissenting. I recognize the rule to be, as stated in *Riggs* v. *Hill,* 201 Ark. 206, 144 S. W. 2d 26, and reaffirmed in *Scrivner* v. *Portis Mercantile Co.,* 220 Ark. 814, 250 S. W. 2d 119: that in an appeal from an order granting or refusing a temporary injunction, the Chancellor's exercise of discretion is usually sustained. In other words, on appeal from an order granting a temporary injunction, we are usually inclined to leave undisturbed the Chancellor's discretion because the merits of the case have not been fully decided. But, in the case at bar, I cannot agree that the temporary injunction should have been issued, because I am of the opinion that the Court did not have before it all proper

parties; and this question had been raised by a demurrer[1] which the Court had overruled before granting the temporary injunction.

This is the first time that Act No. 562 of 1953 (as now found in § 19-4051 Ark. Stats.) has been before this Court; and I think the Act deserves serious study. The Act allows a City of the first class, which owns a municipal utility, to enact an ordinance appointing a commission of five citizens to operate the public utility. I will refer to these five as the ''Commissioners''. The title to the public utility does not pass from the City to the Commissioners; and there is nothing in the Act that says that the Commissioners have the power to bring or defend lawsuits. The title to the property still remains in the municipality,[2] and the Commissioners are merely trustees of the municipality in the operation of the utility and at all times subject to the action of the City Council.

I am thoroughly of the opinion that the trustees of a trust have no power to deal with themselves in handling the trust funds. But I think the beneficiary of the trust (that is, the City Council) should first be called on to stop such dealings, rather than for a mere utility user (as was the appellee Edmonds in this case) to maintain a plenary suit. Edmonds does not occupy the position of a taxpayer in this case because there are no tax moneys involved: he is a mere utility user. He could no more sue the Commissioners, as he is here trying, than any utility user

---

[1] The demurrer read: "That the petitioner has not the legal capacity to maintain this cause of action in that there are no tax moneys involved in the operation of the utility commission of West Memphis, Arkansas paid either by the petitioner or others that he may represent."

[2] Section 6 of the Act says: "Said board created pursuant to the provisions of this act shall have full power to operate and control the plant or plants entrusted to its direction by the city ordinance creating said board . . . . and subject to such restrictions as may be prescribed by the ordinance creating said board". Section 9 of the Act says: "Said Board shall make due report to the City Council with reference to the conditions and affairs of the municipal plants under its control at such time and in such manner as the City Council may designate"; and Section 12 of the Act says: "Nothing contained in this act shall be construed to prohibit the city council of any city subject to the terms of this act from repealing or amending any act which it may have passed pursuant to the authority herein conferred".

could sue the Board of Directors of the corporation owning and operating a utility system.

Edmonds should have gone to the City Council of West Memphis and asked the Council to investigate this matter of the Commissioners dealing with themselves. If the Council had not acted, then Edmonds could have made proper allegations to that effect and joined the City of West Memphis and the Council members in the litigation. I think that such demand on the Council was essential. The situation of Edmonds in the case at bar is very similar to that of a minority stockholder in a corporation, who may think the Board of Directors to be doing something wrongful: such minority stockholder must first go to the Board of Directors (that is, the City Council in the case at bar) and ask the Board of Directors to act. Then if the Board of Directors fails to act, the corporation and the directors must be joined in the litigation brought by such minority stockholder. See *Red Bud Realty Co.* v. *South,* 153 Ark. 380, 241 S. W. 21.

If one utility user in West Memphis can bring a suit against the Commissioners whenever he pleases, then every other utility user can at any time bring such a suit against the Commissioners of the utility; and the result will be that the Commissioners will be busy defending lawsuits rather than operating the utility and reporting to the City Council. Section 9 of the Act No. 562 of 1953 says that the Commissioners will report to the Council; and that is where Edmonds should have first gone to ask for redress. There is no allegation in the complaint in this case that Edmonds ever took the matter up with the City Council of West Memphis. In the evidence it is said that the Mayor agreed to something when Edmonds talked to him; but the Mayor is not the City Council.

I think the City of West Memphis and the City Council are necessary parties in this case. This is not a taxpayer's suit and cannot be brought under Article 16, Section 13 of the Constitution. Neither is this a suit within the purview of § 20-113 Ark. Stats., because I consider Section 8 of the Act 562 to be impotent: it violates Art. V § 23 of the Constitution. In the final analysis, this is a suit

brought by a utility user against the Commissioners who are trustees for the City; and the City and its Board of Aldermen are essential parties to this litigation. Until those parties were before the Trial Court there was a defect of parties and the temporary injunction should not have been issued. For these reasons I respectfully dissent.