The Honorable Bobby G. Newman State Representative Post Office Box 52 Smackover, Arkansas 71762-0052
Dear Representative Newman:
This is in response to your request, submitted on behalf of a constituent, for an opinion on the questions restated and answered below in the order posed in the constituent's memorandum:
 1. May a county or municipality create a monopoly for a private contractor, and thereby deny other contractors "the right to free enterprise" and deny the citizens of such county or municipality the right to choose the contractor from whom they will receive a service?
In my opinion, a county or municipality may lawfully create a monopoly or award an exclusive franchise with respect to the provision of certain services including, in particular, solid waste management and disposal services, with which your constituent's memorandum appears to be primarily concerned. LH Sanitation v. Lake City Sanitation, 769 F.2d 517
(8th Cir. 1985), citing Guerin v. City of Little Rock, 203 Ark. 103,155 S.W.2d 719 (1941).
 2. Is it proper for a quorum court member who is a resident of a city and elected from a district lying wholly or mostly within the limits of the city to "override" members of the quorum court who are elected from districts lying wholly or mostly outside the limits of any municipality in order to force unwanted contracts and contractors upon citizens of unincorporated areas of the county?
In my opinion, the answer is "no." Quorum court members are equals, regardless of whether they are elected from districts lying wholly or mostly within municipalities (for purposes of convenience of reference only, such districts will be referred to in this opinion as "urban districts") or districts lying wholly or mostly outside municipalities (for purposes of convenience of reference only, "rural districts"). No member may "override" another member. Each member has one vote upon each matter coming before the court, and the vote of a majority of the members of the court is necessary to take any legislative action (other than on a motion, which requires a majority vote of a quorum). See A.C.A. §14-14-904(h) (Cum. Supp. 1993).
As a practical matter, because each district is required to contain, insofar as practicable, an equal number of inhabitants of the county (see Ark. Const. amend. 55, § 2(a)), it may be that in counties with a high proportion of its people living within municipalities, a majority of the members of the quorum court will be elected from urban districts. In the absence of unusual circumstances, citizens who live in rural districts of such a county will have no recourse, other than at the ballot box in cooperation with residents of urban districts, against legislative actions taken by such a majority.
 3. If quorum court members elected from urban districts "always put unfair burdens" on residents of rural districts, can a county's existing system of electing one member of the quorum court from each district "be contested in court and revert back" to a system under which two members are elected from each township?
In my opinion, the answer is "no." Single-member districts are required by the constitution. Ark. Const. amend. 55, § 2(a).
The fourth question appears to concern whether a county or municipality may be obligated to pay public funds under certain circumstances and pursuant to certain contractual provisions. Because the question is unclear and the contract at issue has not been provided to this office, I am unable to render any opinion on the question.
 5. (a) Should a county have an attorney review proposed contracts before execution? (b) Should the terms of proposed county contracts be made public so that citizens may express their views to quorum court members prior to execution?
With respect to part (a) of the question, nothing in Arkansas law requires a quorum court to obtain legal review of a proposed contract prior to its execution. In my opinion, the determination of whether to refer a proposed contract to an attorney is a matter left to the discretion of the quorum court.
With respect to part (b) of the question, it is my opinion that the answer may be "yes," depending upon the complexity of the proposed contract and other factors that will vary on a case-by-case basis. Arkansas Code Annotated § 14-14-109 provides in part:
 (a)(1) All meetings of a county government governing body, board, committee, or any other entity created by, or subordinate to, a county government shall be open to the public except as provided in subdivision (2) of this subsection.
 (2) A meeting, or part of a meeting, which involves or affects the employment, appointment, promotion, demotion, disciplining, dismissal, or resignation of a county government official or employee need not be open to the public unless the local government officer or employee requests a public meeting.
 (b) In any meeting required to be open to the public, the county quorum court, committee, board, or other entity shall adopt rules for conducting the meeting which afford citizens a reasonable opportunity to participate prior to the final decision.
From the foregoing, it appears that a meeting at which a quorum court is to take action on a proposed contract generally is required by the statute to be open to the public. With respect to any such meeting, the quorum court is required by the statute to adopt rules which afford citizens a reasonable opportunity to participate. In my opinion, the quorum court must decide, on a case-by-case basis (unless it determines to publish[1] all proposed contracts), whether prior publication of the terms of a particular proposed contract is necessary in order to afford citizens a "reasonable opportunity" to participate prior to the final decision. It would seem that the complexity of the proposed contract would be an important determinant in making that decision: if the proposed contract is so simple that its terms may be briefly explained and easily understood at the meeting, prior publication likely would not be required. If, on the other hand, the terms of the proposed contract are significantly more complex, it likely will be impossible for the citizens to participate meaningfully in the meeting without having had access to the terms of the proposed contract for some period prior to the meeting. The opportunity to participate in a meeting, but only on an uninformed basis, likely would not be held by a court to constitute a "reasonable" opportunity. Other factors, perhaps including the amount of county funds to be paid under the contract, the nature of the goods or services to be received by the county or the citizens, and the term of the contract, probably will be appropriate for the quorum court to consider in making this decision in particular cases.
Citizens may also gain access to a proposed county contract through the Freedom of Information Act, A.C.A. §§ 25-19-101 to -107 (Repl. 1992 and Supp. 1993), if the proposed contract is a "public record" under the act and no exception applies in the particular case.
 6. (a) If a quorum court member who chairs a committee of the court and "furnishes the facts and figures to get a contract for a contractor" later resigns and becomes an employee of the contractor, "could this be considered [a] conflict of interest[,] mistrust and misleading[,] and warrant an investigation of this contract being illegally gotten and therefore voiding the contract[?]" (b) If the answer to the foregoing is "yes," what criminal charges could be filed against the various parties?
With respect to part (a) of the question, nothing in the law prohibits a quorum court member from resigning his position and pursuing any employment or occupation. There are, however, certain provisions of law that might be applicable if the quorum court member, while in office, acted with corrupt intent in facilitating the contract.
Arkansas Code Annotated § 14-14-1202 (Cum. Supp. 1993) provides that the holding of county public office is a public trust, and that officers shall carry out their duties for the benefit of the people of the county. It further provides:
 The officer or employee may not use his office, the influence created by his official position, or information gained by virtue of his position to advance his individual personal economic interest or that of an immediate member of his family or an associate, other than advancing strictly incidental benefits as may accrue to any of them from the enactment or administration of law affecting the public generally.
The statute also contains rules of conduct governing the relationships of county officials to business enterprises, including a prohibition upon a county officer being interested, directly or indirectly, in any contract entered into on behalf of the county. A.C.A. § 14-14-1202(c)(1).
Arkansas Code Annotated § 21-8-304(a) provides:
 No public official or state employee shall use his position to secure special privileges or exemption for himself, his spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he has a substantial financial relationship, that is not available to others, except as may be otherwise provided by law.
Whether and how these statutes, or others that are part of the criminal code and may or may not be applicable to a particular case, apply in a given situation are questions that are highly dependent upon all of the surrounding facts and circumstances. This office is neither empowered nor equipped to make the searching factual inquiry necessary to determine whether violations of law may have occurred in the course of the events referred to in the memorandum.
I am unable to render a definitive opinion about the legal effect upon a county contract of a quorum court member's unlawful acts in connection with the procurement of the contract, such effect being dependent upon the facts and circumstances of each particular case. It appears, however, that payments under a public contract, with respect to which one or more members of the public body acted unlawfully in approving the contract, may amount to illegal exactions under Ark. Const. art. 16, §13. See Price v. Edmonds, 231 Ark. 332, 330 S.W.2d 82 (1959), in which the Supreme Court of Arkansas affirmed, under Ark. Const. art. 16, § 13, the chancery court's granting of an injunction against payments under a public utility's contracts with one or more members of the utility commission and companies in which they had beneficial interests. See alsoCity of Fordyce v. Vaughn, 300 Ark. 554, 781 S.W.2d 6 (1989) (Glaze, J., concurring).
I must decline to give any opinion with respect to part (b) of the question. The criminal charges, if any, that may be appropriate are dependent upon all of the relevant facts and circumstances of the case. Decisions about whether to prosecute, who to prosecute, and what charges to bring are left to the sound discretion of the prosecuting attorney of the jurisdiction. This office has no authority over such matters.
 7. "Can the People vote to form their own County Solid Waste District if other counties are making us their dumping grounds and running our solid waste program?"
In my opinion, Arkansas law contains no provision for such a vote. The regional solid waste management board whose district includes the county has primary responsibility for providing a solid waste management system for the district. A.C.A. § 8-6-710 (Repl. 1993). In my opinion, a county has neither the responsibility nor the power to provide solid waste management services except (a) to the extent the regional board is unable to provide certain of such services or it is agreed between the county and the regional board that the county will continue to provide certain of such services, or (b), at the county's own expense, services in addition to those provided by the regional board. Id.
 8. May a county contract be for a term longer than one and one-half the length of a quorum court member's term of office?
Members of a quorum court are elected for terms of two years. A.C.A. §14-14-1302.
In my opinion, there are no state statutes limiting the term of county contracts. Reference should be made in particular cases, however, to Ark. Const. art. 12, § 4, which provides in part:
 [N]o county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which such contract or allowance is made; nor shall any county judge, county clerk or other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year. . . .
A factual inquiry on a case-by-case basis is necessary to determine whether this constitutional provision limits the term of any particular county contract.
 9. If a county or municipal contract is for a term of more than three years, may the contract "be considered void and new bids taken?"
Please see the answer to question 8 above with respect to whether a county contract of a term longer than a fiscal year may be in violation of Ark. Const. art. 12, § 4. Contracts in violation of this constitutional provision are void. Warren v. State, 232 Ark. 823,340 S.W.2d 400 (1960).
 10. May solid waste fees be billed and collected with personal property taxes if the citizens "have an [opt] out clause that says they do not have to use the county contractor?"
Arkansas Code Annotated § 8-6-212(b) (Repl. 1993) provides in part:
 A county government shall have the authority to levy and collect such fees and charges and require such licenses as may be appropriate to discharge the county's responsibility for a solid waste management system or any portion thereof. The fees, charges, and licenses shall be based on a fee schedule contained in a duly adopted ordinance.
 (1)(A) A county government may collect its fees and service charges through either its own system of periodic billing or by entering the fees and service charges on the tax records of the county and then collecting the fees and service charges with the personal property taxes on an annual basis.
 (B) Further, any fees and service charges billed periodically by the county which are more than ninety (90) days delinquent on November 1 of each year may be entered on the tax records of the county as a delinquent periodic fee or service charge and may be collected by the county with personal property taxes.
 (C) No county collector of taxes shall accept payment of any property taxes where annual fees and service charges or delinquent periodic fees and service charges appear on the county tax records of a taxpayer unless the fees and service charges due are also received.
* * *
 (3) Annual fees and service charges or the delinquent periodic fees and service charges which remain unpaid after the time other property taxes are due shall constitute a lien on the real and personal property of the taxpayer which may be enforced against such property by an action in chancery court.
This statute does not contain any exception to the authority of a county to collect solid waste fees and charges through the personal property tax collection mechanism. Without more information about the "opt out" clause referred to in the question, it is impossible for me to reach any conclusion concerning its legal effect.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] I use the words "publish" and "publication" in their broadest sense, to mean the making public, by whatever means, of the terms of the proposed contract. Nothing in the law requires a quorum court to make such terms public by publishing them in a newspaper or in any other particular manner.