Winston BRYANT, Attorney General *v.* ARKANSAS PUBLIC
SERVICE COMMISSION

CA 95-109 931 S.W.2d 795

Court of Appeals of Arkansas
En Banc
Opinion delivered November 6, 1996
[Petition for rehearing denied December 11, 1996.]

128

*Winston Bryant*, Att'y Gen., by: *Shirley Guntharp*, Deputy Att'y Gen., and *Suzanne Antley*, Ass't Att'y Gen., for appellant.

*Ivester, Skinner & Camp, P.A.*, by: *Edward Skinner*, for appellee Arkansas Public Service Commission.

*Ann E. Mealeman* and *Garry S. Wann*, for appellee Southwestern Bell Telephone Company.

JOHN F. STROUD, JR., Judge. This appeal is brought by the Attorney General of the State of Arkansas from Orders No. 52, 56, 61, 62, 63, and 64 issued by the Arkansas Public Service Commission in Docket #92-260U and results from the Commission's refusal to compel Southwestern Bell Telephone Company (SWB) to respond to discovery propounded by the Attorney General. The Attorney General argues that, in denying his discovery requests, the Commission failed to pursue its authority regularly and abdicated its responsibility to regulate SWB. We conclude that the Commission has regularly pursued its authority and has not abused its discretion in denying the Attorney General portions of his requested discovery. The orders of the Commission are affirmed.

In Docket #92-260U, the Commission approved a stipulation entered into by SWB, the Staff of the Public Service Commission (Staff), and twenty other parties. This Stipulation resulted from an investigation conducted by Staff of SWB's earnings that found SWB's rates had produced earnings of $33 million in excess of SWB's reasonable revenue requirement. The Stipulation disposed of the issues raised by the excess earnings by providing that SWB would make incremental investments of $231 million over a three-year period to upgrade its infrastructure in Arkansas in lieu of potential rate reductions. The Commission approved the Stipulation in Order No. 38, but Order No. 38 also required SWB to establish a deferred account and to file quarterly reports so that the Commission could monitor the implementation of the upgrades. Order No. 38 further provided that the Commission would on an annual basis formally review the status of the deferred account, the investments made and projected investments remaining, and the revenues generated by those investments.

SWB filed a motion to clarify the procedure for developing the investment monitoring reports and also advanced a "Plan Investment Monitoring Report" form to be adopted on an interim basis. Staff supported the motion with some proposed modifications

and also recommended that SWB's monitoring report form be adopted. The Attorney General objected to SWB's motion, but he did not raise any specific objection to the adoption of SWB's proposed format for the plan investment monitoring reports, nor did he propose any additions to the format or request that any additional information be included in the monitoring reports. Commission Order No. 40 adopted SWB's motion as modified by specific provisions of Staff's response.

On April 21, 1994, and August 19, 1994, SWB filed its first- and second-quarter infrastructure reports, its plan investment monitoring reports, and monthly reports and work papers as required by Orders No. 38 and 40. The Attorney General then served SWB with thirty-six interrogatories, most containing five to six subparts, and thirty-one requests for production of documents that sought extensive and specific discovery of the information contained in the infrastructure reports. SWB objected to the Attorney General's discovery requests, contending that the information sought was irrelevant and immaterial, beyond the scope of the docket, and unduly burdensome and oppressive. The Attorney General filed a motion to compel responses to his discovery and also served SWB with a second set of interrogatories and production of documents that requested detailed information about the infrastructure report filed by SWB on October 21, 1994. SWB again objected to the Attorney General's requests, and the Attorney General moved to compel SWB to respond to his requests.

The Commission denied the Attorney General's motions in Order No. 52. It held that the monitoring reports contain extensive information on the infrastructure investments that are available to the Attorney General, and that the Attorney General has not cited any specific reason for his extensive discovery requests nor identified a specific flaw in the reports necessitating such extensive discovery. The Commission did provide, however, that, if the Attorney General knew of a specific deficiency or problem with the monitoring reports, he should bring it to the Commission's attention.

The Attorney General petitioned for rehearing of Order No. 52. He argued that the infrastructure reports did not reflect the information that Order No. 38 indicated would be necessary, i.e., whether the infrastructure upgrades are being implemented in a timely manner and in a manner which is most beneficial to the public. He also argued that the reports did not provide the informa-

tion necessary for the Commission to supervise and regulate SWB to ensure compliance with its orders. In Order No. 56, the Commission denied the Attorney General's petition for rehearing, stating that the Attorney General has not responded to Order No. 52 by citing any specific problems or deficiency in the monitoring reports or in the implementation of the infrastructure investment. The Commission noted that the Attorney General continues to argue the inadequacy of the monitoring reports adopted by Order Nos. 38 and 40, even though he had the opportunity to raise this issue during the extensive proceedings that led to the entry of Order No. 38 or to raise the issue in a petition for rehearing of that Order.

The Attorney General appealed Orders No. 52 and 56, and during this period, the Commission entered Order No. 55.[1] In response to this order, Staff and SWB each filed separate annual reports regarding the implementation of the Stipulation. The Commission then entered Order No. 58, which scheduled a public hearing to address and consider the proposed adjustments and modifications recommended by SWB and Staff to the Stipulation investments and infrastructure upgrades. The Attorney General sought additional discovery from SWB regarding its annual report. SWB answered some of the interrogatories and referred the Attorney General to its monthly infrastructure reports filed under seal with the Commission for the answers to others. SWB also filed separately its objections to the Attorney General's interrogatories and requests for production of documents.

The Commission addressed the parties' motions in Order No. 61:

1. Interrogatories No. 1(a), 2(a), 3(a), 4(a), 5(a), 6(a) and 7(a).

SWBT responded to each of these Interrogatories by referring the AG to information contained in the Monthly Infrastructure Reports....

The information sought by the AG can be obtained

---

[1] Order No. 55 has not been abstracted nor included in the record. This Court infers from the language in Staff's and SWB's annual reports that Order No. 55 instructed them to file annual reports regarding the implementation of the upgrades.

from the Monthly Infrastructure Reports. Pursuant to Rule 13.08(c), SWBT's answers to the above referenced Interrogatories [are] sufficient. If the AG or the AG's experts require guidance to interpret the contents of the Monthly Infrastructure Reports, the AG has the option to depose the appropriate employee of SWBT to explain the contents of the Reports.

2. Interrogatories No. 1(b)-(g), 2(b)-(g), 3(b)-(g), 4(b)-(g), 5(b)-(g), 6(b)-(g) and 7(b)-(g), and Requests for Production No. 1, No. 2, No. 3, No. 4, No. 5, No. 6 and No. 7.

In each of the above referenced interrogatory subparts the AG requests extensive and specific information on the investments which are the subject of the interrogatory, including all payees, the amounts of each payment, dates of payments and specific equipment received for expenditures....

....

The information sought by the AG does not appear on its face to be relevant to the issues which are the subject of the scheduled hearing and it is questionable whether the interrogatories are designed to lead to information relevant and material to those issues. However, the information may be relevant to the Report filed on March 10, 1995, and some of the requested information may be peripherally related to the issues which are the subject of the hearing. The task of compiling the extensive and detailed information which might be responsive to the AG's Interrogatories and Requests in one location would be burdensome and unreasonable. It is a sufficient response to allow the AG to inspect the information at the location of the information....

3. Interrogatories No. 10, No. 11, No. 12, No. 13, No. 14, No. 15, No. 16 and No. 28 and Requests for Production No. 8, No. 9, No. 10, No. 11, No. 12, No. 13 and No. 14.

In each of these Interrogatories the AG seeks "the amount of revenue that has been generated for SWB to date as a result of expenditures made pursuant to Order No. 38 ..." and other information. SWBT responded that the Quarterly Plan Investment Monitoring Reports filed with

the Commission and provided to the AG track the revenue generated on a monthly basis.

Pursuant to Rule 13.08(c), SWBT has adequately responded to the Interrogatories by specifying the records in the possession of the AG from which the answers may be derived. If the AG needs to have the records interpreted or explained, the proper course of action is to depose the appropriate SWBT employee to interpret the records.

Order No. 61 denied the Attorney General's motion to compel answers to Interrogatories No. 17 through 27 and Requests for Production No. 15 through 28. The Commission held that these interrogatories and requests for production were not relevant to the Report filed March 10, 1995, or the issues scheduled for hearing on May 9, 1995.

The Attorney General filed an additional discovery motion that complained that SWB was withholding from discovery contracts it had with certain vendors. Order No. 62 allowed the Attorney General to inspect the contracts SWB had with various vendors on the conditions stated by the vendors. The Attorney General also petitioned for rehearing of Orders No. 61 and 62, contending that these orders reflected a failure on the part of the Commission to pursue its authority regularly. Order No. 61, the Attorney General claimed, was unlawful because it held information regarding revenues generated by the Stipulation irrelevant; whereas, the Commission had said in Order No. 38 that it would review revenues annually. The Attorney General claimed that Order No. 62 was illegal because the order condoned SWB's violation of Order No. 61 and because the Commission reversed its position from Order No. 61.

Order No. 63 denied the Attorney General's petition for rehearing of Orders No. 61 and 62. The Commission again stated that the scheduled hearing was limited to the purpose of considering adjustments and modifications to the Stipulation investments and infrastructure upgrades and that the Attorney General's discovery exceeded the scope of the hearing. The Commission further stated that, if the Attorney General's discovery regarding the annual report filed by SWB leads to some legitimate issue, the Attorney General may raise that issue before the Commission in an appropriate pleading but that it would not entertain a collateral attack on

Orders No. 38 and 40. The Commission concluded that the appropriate time to deal with the overall issues of revenues generated from the Stipulation investments was at the conclusion of the three-year period of implementation, when the Commission would direct an appropriate review.

The Attorney General's petitions for rehearing of Orders No. 61, 62, and 63 were denied by the Commission in Order No. 64. The Commission held that the revenue information requested by the Attorney General was beyond the scope of the reports required by the Commission, that the Commission had allowed the Attorney General to depose a SWB employee to have the reports explained but that it did not require SWB to compile additional information, and that the Attorney General had confused discovery with an entitlement to specific answers. The Attorney General's second notice of appeal sought reversal of Orders No. 61, 62, 63, and 64 and was consolidated with his appeal of Orders No. 52 and 56.

The Attorney General has stated one point for appeal: The Commission failed to pursue its authority regularly by abdicating its responsibility to regulate SWB. The relief he is seeking is the remand or setting aside of Orders No. 52, 56, 62, 63, and 64, and the part of Order No. 61 that found his discovery requests irrelevant. He contends that the Commission in Order No. 38 gave SWB unprecedented use of over-earned ratepayer money and has joined with SWB in thwarting all of his attempts to obtain information about the actual use of the funds. In his brief, he has made numerous arguments criticizing the Commission's refusal to compel SWB to respond to his extensive discovery requests and disagrees with SWB's and the Commission's characterization of his appeal as a "discovery dispute." From our review, however, we find that the issue presented by this appeal is whether the Commission abused its discretion in refusing to compel SWB to respond to all of the Attorney General's discovery requests. We conclude that there has been no abuse.

Our review of appeals from the Public Service Commission is limited by the provisions of Arkansas Code Annotated § 23-2-423(c)(3), (4), and (5) (Supp. 1995), which define our standard of judicial review as determining whether the Commission's findings of fact are supported by substantial evidence, whether the Commission has regularly pursued its authority, and whether the order under review violated any right of the appellant under the

laws or the Constitutions of the State of Arkansas or the United States. *See Bryant* v. *Arkansas Pub. Serv. Comm'n*, 46 Ark. App. 88, 102, 877 S.W.2d 594 (1994). The Arkansas Public Service Commission has broad discretion in exercising its regulatory authority, and courts may not pass upon the wisdom of the Commission's actions or say whether the Commission has appropriately exercised its discretion. *AT&T Communications of the Southwest, Inc.* v. *Arkansas Pub. Serv. Comm'n*, 40 Ark. App. 126, 129, 843 S.W.2d 855 (1992); *Russellville Water Co.* v. *Arkansas Pub. Serv. Comm'n*, 270 Ark. 584, 588, 606 S.W.2d 552 (1980). Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis, and something more than mere error is necessary to meet the test. *Woodyard* v. *Arkansas Diversified Ins. Co.*, 268 Ark. 94, 97, 594 S.W.2d 13 (1980). To set aside the Commission's action as arbitrary and capricious, the appellant must prove that the action was a willful and unreasoning action, made without consideration and with a disregard of the facts or circumstances of the case. *AT&T Communications of the Southwest, Inc.* v. *Arkansas Pub. Serv. Comm'n*, 40 Ark. App. at 130. This Court has often said that, if an order of the Commission is supported by substantial evidence and is neither unjust, arbitrary, unreasonable, unlawful, or discriminatory, then this court must affirm the Commission's action. *Arkansas Elec. Energy Consumers* v. *Arkansas Pub. Serv. Comm'n*, 35 Ark. App. 47, 76, 813 S.W.2d 263 (1991).

■ The Attorney General begins his brief by arguing that the Commission abdicated its responsibility to regulate SWB by failing to observe its own discovery rules, disregarding Arkansas precedent, and not requiring SWB to follow its directives. Section 13 of the Commission's Rules of Practice and Procedure governs discovery. Rule 13.01 provides that any party may obtain discovery to the extent that it is relevant and material. Rule 13.02(a) specifically provides:

> Parties may obtain discovery regarding any matter, not privileged or subject to claim for a protective order pursuant to Rule 13.05 herein, which is relevant and material to the issues in the pending docket. Control of the frequency of use and extent of discovery rests in the sound discretion of the Commission.

Although the Attorney General argues that Rule 13.02 allows discovery of any issue remaining in a pending docket, Rule 13 specifi-

cally refers to "any matter ... which is relevant *and* material." (Emphasis added.) Order No. 52, which denied the Attorney General's discovery requests filed on August 23 and October 25, of 1994, held that the Attorney General was conducting a "fishing expedition," and had not cited any specific reason for his extensive discovery requests. Although the Commission gave the Attorney General the opportunity to demonstrate that the information he requested was relevant and material to the infrastructure reports required by Order No. 38, the Attorney General merely repeated his conclusions that the reports do not reflect the information that Order No. 38 indicated would be necessary, i.e., whether the infrastructure upgrades are implemented in a timely manner and in a manner most beneficial to the public.

■ In his brief, the Attorney General argues that, without the information he seeks to discover, SWB could report any number that it chooses and, therefore, it is necessary to have the supporting documentation in order to determine whether SWB is reporting accurate information. This argument further convinces us that the Commission was correct in its conclusion that the Attorney General was pursuing a "fishing expedition." A party to a pending action has no right to call for books, papers, and documents from his adversary merely for the purpose of entering into a "fishing examination" of them; to authorize their production there must be a substantial showing that the book, paper, or document sought *contains material evidence in support of the cause of action or defense of the party asking for it.* Price v. *Edmonds,* 231 Ark. 332, 337, 330 S.W.2d 82 (1959). It is not sufficient for a party to allege generally the materiality of the books or documents, as this would be the averment of a conclusion and permit the question of materiality to be decided by the applicant instead of by the court; nor is it sufficient to allege that such books or papers contain evidence relative to the merits of the action, but it must be made to appear wherein such relation exists. *Id.* at 338.

■ The Commission in Orders No. 38 and 40 determined the information that should be included in, and the format of, the infrastructure reports. Although the Attorney General objected to SWB's clarification of Order No. 38, he did not propose that any additional information be required, nor did he appeal from these orders. The Commission found that neither Order No. 38 nor Order No. 40 required that the information sought by the Attorney

General be included in the reports, and the Attorney General has not demonstrated that this discovery is necessary for the Commission to determine whether the upgrades are being implemented in a timely manner and in a manner most beneficial to the public.

 The Attorney General also asserts that the Commission's complete disallowance of any discovery on the issue of revenues was arbitrary and capricious. The Attorney General's assertion, however, is contrary to the evidence. The quarterly reports filed by SWB contain revenue information. Commission Order No. 61, from which this Court quoted earlier in this opinion, found that much of the information the Attorney General sought was in SWB's monthly infrastructure reports but allowed the Attorney General to depose a SWB witness for the purpose of having the reports explained. The Commission further held that other information did not appear to be relevant to the issues scheduled for hearing by Order No. 58 but that it may be relevant to the March 10, 1995, report and that the Attorney General could inspect this information at its location. There was also evidence that SWB incurred approximately $6,000.00 in copying costs in its attempts to comply with Order No. 61. The Attorney General has failed to demonstrate that he was denied access to any relevant and material information.

The Attorney General next argues that the Commission abused its discretion by refusing him discovery of certain vendor contracts despite the fact that SWB had failed to apply for a protective order under Commission Rule 13.05. The Attorney General contends that the Commission allowed him to discover contracts between SWB and third-party vendors in Order No. 61 but that SWB later failed to produce the contracts, arguing that they were subject to a contractual provision prohibiting their disclosure. SWB responded that it was prohibited by the contracts from releasing them; however, it had contacted the vendors and sought their cooperation. Thereafter, AT&T responded that it would allow the Attorney General to obtain one copy of its contracts with SWB but that the Attorney General must return the copy to AT&T at the conclusion of the hearing. The Commission, in response to the Attorney General's motion for sanctions, entered Order No. 62, which allowed the Attorney General to review the AT&T contracts under the terms and conditions stated by AT&T and also held that the information sought by the Attorney General did not appear to

be relevant to the issues at the scheduled hearing. The Attorney General contends that the Commission's ruling in Order No. 62 is unlawful because the Commission reversed its position taken in Order No. 61; it ignored the requirements of Rule 13.05; it ignored supreme court precedent; and it ignored its responsibility to ensure compliance with its orders as required by Ark. Code Ann. § 23-1-103(a) (1987), which states in part that every public utility shall obey and comply with every order of the Commission in any matter affecting the business of any public utility and that it shall do everything necessary to secure compliance with its orders.

We find no merit to the Attorney General's argument. Rule 13.05 outlines the procedure for obtaining a protective order and allows a party to seek a protective order "[d]uring discovery, or during later stages of a formally docketed proceeding." Rule 13.05 also refers to Ark. Code Ann. § 23-2-316 (1987), which provides in part:

> (b)(1) Whenever the commission determines it to be necessary in the interest of the public or, as to proprietary facts or trade secrets, in the interest of the utility to withhold such facts and information from the public, the commission shall do so.
>
> (2) The commission may take such action in the nature of, but not limited to, issuing protective orders, temporarily or permanently sealing records, or making other appropriate orders to prevent or otherwise limit public disclosure of facts and information.

Clearly, under its legislative authority and internal rules, the Commission had the authority at any stage of the proceedings to find the documents were protected and limit their discovery.

The Attorney General cites *Dunkin* v. *Citizens Bank of Jonesboro*, 291 Ark. 588, 590, 727 S.W.2d 138 (1987), for his assertion that the Commission refused to follow supreme court precedent. *Dunkin*, however, concerns a defendant's refusal to answer interrogatories in a wrongful death action and bears no relevance to the proposition that the Attorney General argues here.

The Attorney General also asserts that the Commission failed to follow its own directives in Order No. 61 by not requiring SWB to answer with specificity Interrogatories 10-16 and Requests for

Production Nos. 11-14. Order No. 61 stated that SWB had adequately responded to the requests by specifying the records in the possession of the Attorney General from which the answers could be derived but allowed the Attorney General to depose a representative of SWB for the purpose of having the records interpreted or explained. The Attorney General deposed SWB witness Larry Walther and, after doing so, filed a motion to compel responses. The Attorney General claimed that, because Mr. Walther said in his deposition that the Quarterly Plan Investment Monitoring Reports reflect only a total revenue generated from the investments in all of the projects and that revenue information on individual projects does not exist, SWB had not followed the Commission's directive. The Commission disagreed. In Order No. 63, it said:

> In this Motion, the AG requests that the Commission compel Southwestern Bell Telephone Company (SWBT) to compile and create new records to respond to the AG's Interrogatories and Requests for Production. The AG acknowledges that the Commission did not require SWBT to compile and report the revenue information the AG is requesting in Order No. 38. In essence, the AG is requesting a modification of Order No. 38 over a year after the Order was entered.

The Attorney General is now attempting to convince this Court that Order No. 61 found that all revenue information the Attorney General sought through discovery was relevant and discoverable and, therefore, when the Commission did not compel discovery of all the revenue information in Order No. 63, it was disregarding its previous order. There is no merit to this argument. Order No. 61 did not find that the Attorney General's requested discovery was relevant or discoverable. It merely required SWB's representative to explain the reports it had already filed. The Attorney General has not claimed that SWB refused an explanation of its reports.

The Attorney General further claims that, by declining in Orders No. 52, 56, 61, 62, 63, and 64 to require SWB to respond to his discovery requests, the Commission arbitrarily and capriciously reversed its position from that taken by it in Order No. 38. We disagree. Order No. 38 provided:

SWBT shall file in this docket a quarterly report reflecting the status and activity in the deferred account including interest thereon. The Commission will on an annual basis during the life of the Stipulation formally review the status of the deferred account, the investments made and projected investment remaining, and the revenues generated by those investments. The Commission will also make appropriate adjustments in SWBT's rates if necessary using the deferred account. During the annual review and/or upon petition of SWB to the Commission, the Commission will consider any proposed adjustments in the amounts allocated in the Stipulation to the various projects proposed in the Stipulation. Substantial adjustments transferring money allocated from one Stipulation project to another shall only be made after an order of the Commission is entered approving the proposed adjustment.

Although the Attorney General has repeatedly claimed that the information in the reports is insufficient for the Commission to determine whether the expenditures are most beneficial to the public or whether a reallocation of funds should be ordered, he has failed to demonstrate how his broad discovery requests are relevant and material to these issues. Furthermore, the Commission has in fact required SWB to produce additional information in response to the Attorney General's interrogatories, and it has also found that much of the information requested by the Attorney General has been provided to him in the monthly and quarterly reports.

 The Attorney General argues that the Commission dramatically changed its position on the revenue issue in Order No. 63. The Attorney General states that Order No. 38 unequivocally provides that the Commission will review the revenues generated by the Stipulation investments annually but that the Commission amended this provision in Order No. 63 when it stated that "the appropriate time to deal with the overall issue of revenues generated from the stipulation investments is at the conclusion of the three-year period of the implementation, when the Commission will direct appropriate review." The evidence is overwhelming, however, that the Commission did in fact conduct an annual review as specified by Order No. 38. The Commission states at the beginning of Order No. 58 that it had directed Staff and SWB to file reports on the implementation of the Stipulation approved in Order No.

38. From the language in Staff's and SWB's Stipulation reports and Order No. 58, it appears that the Commission requested these reports in order to conduct its annual review of the deferred account as provided by Order No. 38. Order No. 64 states that the Commission had conducted the annual review:

> The Commission conducted the first annual review of Stipulation investments and upgrades based upon the reports filed by SWBT and Staff on March 10, 1995. There is no requirement that the Commission conduct public hearings or issue orders or findings in conjunction with the annual review of the Stipulation. However, in view of SWBT's request to make certain modifications and adjustments in the Stipulation expenditures, the Commission did schedule a public hearing on May 9, 1995, for the limited purpose of considering the modifications and adjustments proposed in SWBT's Report. Based upon a review of the reports filed by SWBT and Staff, the Commission determined that the proposed modification was the only issue which required further examination and the Commission scheduled a public hearing for that limited purpose.

The Attorney General argues that the Commission's failure to hold a formal hearing on the issue of revenues is contrary to its holding in Order No. 38; however, the clear wording of Order No. 38 does not support this interpretation. Furthermore, Rule 3.02 of the Commission's Rules of Practice and Procedure provides that "[a]ny matter before the Commission, including formal applications as defined in Section 4 of these Rules, may be adjudicated by administrative order based on the facts presented in the application without a hearing unless a hearing is required by law, the Commission, or these Rules." The Attorney General has not argued any rule of procedure or statute that requires a hearing in this situation, and there is no evidence that the Attorney General ever requested a hearing on the issue of revenues.

In summary, we find that the sole issue presented by this appeal is whether the Commission abused its discretion in denying the Attorney General's discovery requests. Rule 13.02(a) of the Commission's Rules of Practice and Procedure provides that "[c]ontrol of the frequency of use and extent of discovery rests in the sound discretion of the Commission." Based on our review of the pleadings, the briefs and oral arguments of the attorneys for the

parties, and the numerous orders entered by the Commission in response to the discovery requests, we cannot say that the Commission abused its discretion.

Affirmed.

JENNINGS, CJ., and PITTMAN, ROBBINS, MAYFIELD, and ROGERS, JJ., agree.