Winston BRYANT, Attorney General *v.*
ARKANSAS PUBLIC SERVICE COMMISSION

CA 93-291                                    877 S.W.2d 594

Court of Appeals of Arkansas
En Banc
Opinion delivered June 15, 1994

90

*Winston Bryant*, Att'y Gen., by: *Shirley E. Guntharp*, Deputy Att'y Gen., for appellant.

*Kathleen D. Gardner*, and *Wright, Lindsey & Jennings*, by: *N.M. Norton, Jr.*, and *J. Mark Davis* for appellee Arkansas Louisiana Gas Company.

*Kirkland & Ellis*, by: *James D. Senger* and *Mitchell F. Hertz*; and *The Rose Law Firm, A Professional Association*, by: *Herbert C. Rule III* and *Stephen N. Joiner*, for appellee Arkansas Gas Consumers.

*Kenny W. Henderson*, for appellee Arkansas Public Service Commission.

JAMES R. COOPER, Judge. In 1992, Arkansas Louisiana Gas Company (ALG) requested a $23 million rate increase from the Arkansas Public Service Commission (Commission). It also sought permission to reallocate its rates among its different classes of customers, including a 15.13% rate increase for its residential customers and a 53% rate decrease for its larger industrial customers. ALG claimed that the costs for providing residential services were being subsidized by its larger industrial customers and that, unless these subsidies were eliminated, ALG was in danger of losing its large industrial customers to bypass.[1] Arkansas Gas Consumers (AGC), a group of industrial and agricultural companies, the Consumer Utilities Rate Advocacy Division of the Attorney General's Office, and the general staff of the Arkansas

---

[1]Bypass occurs when large customers arrange direct access to a pipeline supplier; in addition to diminished contribution to fixed costs, bypass can adversely affect remaining customers by reducing the economies of scale achieved by local distribution companies. Mary Nagelhout, Courts and Commissions, *"Antibypass" Discounts: Load Preservation Without Rate Discrimination*, PUBLIC UTILITIES FORTNIGHTLY, Feb. 1, 1991 at 45-47. "The bypass of a regulated utility may result in stranded investment, duplicative facilities, and higher rates for remaining customers." *Re Transportation, Bypass and Standby Service in the Natural Gas Industry*, 84 PUR 4th 646 (Ark. P.S.C. 1987).

Public Service Commission (Staff) were also parties to this proceeding.

Pursuant to a procedural schedule set by order of the Commission, the various parties filed direct, rebuttal, and surrebuttal testimony in support of their positions on various issues. The Staff conducted extensive discovery of ALG, including an on-premises audit, and afterwards, ALG reduced its requested rate increase to $17.4 million. Staff responded that its audit showed ALG was only entitled to an $11.1 million increase in rates.

A hearing on ALG's rate application was scheduled for November 2, 1992. Approximately four days prior to the hearing, ALG and Staff began discussing settlement of the issues contained in ALG's application. Although invited to participate, the Attorney General declined to participate in the negotiations but was kept informed of the parties' progress. On November 2, the Commission convened for the hearing on ALG's rate application, at which time ALG's attorney notified the Commission that Staff and ALG had reached agreement on the issues involved and asked that the Commission recess the hearing so that a joint proposed stipulation could be filed with the Commission. Staff and AGC joined in ALG's motion; AGC stated that it anticipated it would join in the stipulation. The Attorney General objected to both the Commission's consideration of the stipulation and the granting of a recess. The Commission heard the parties' opening statements, obtained public comments, and admitted the prefiled testimony into evidence before it recessed. The Commission reconvened the following morning and announced it would hear testimony for and against the Joint Proposed Stipulation (JPS). The Attorney General again objected to the Commission's consideration of the JPS but did not request a continuance. ALG, AGC, and Staff then presented testimony in support of the JPS. The Attorney General was allowed to cross-examine these witnesses as well as any other witnesses of the parties on the JPS or ALG's application for a rate increase. The Attorney General also presented testimony in opposition to the adoption of the JPS. At the end of the hearing, the Commission allowed the parties to file briefs supporting or opposing the JPS.

In Order No. 13, entered on December 18, 1992, the Commission approved the JPS. The Commission, in a thirty-five-page order, found that the JPS produced "rates which were just and rea-

sonable for all classes of ALG's customers" and therefore concluded that "the JPS is in the public interest. . . ." It noted that ALG had requested a rate increase of $17.4 million, that Staff had recommended an increase of $11.1 million, and that the $13.5 million increase included in the JPS represented a blending of the parties' relative positions. The Commission also found that the Attorney General was given a full opportunity to be heard on the merits of both the JPS and ALG's application and that the Commission had the authority to consider and adopt the JPS without the approval of the Attorney General. The Commission further found that the statutory requirements set forth in Ark. Code Ann. § 23-4-101 (1987) had been followed and there was no violation of the Attorney General's due process rights. After making extensive findings of fact as to why the Commission found the JPS to be in the public interest and supported by substantial evidence, the Commission concluded:

Accordingly, the Commission finds and orders as follows:

1. The Commission has the jurisdiction and authority to consider the JPS as a reasonable resolution of all issues pending in this proceeding. The AG's objection to the JPS does not bar the Commission from considering and approving the JPS within the context of this proceeding if the Commission finds that the JPS is supported by substantial evidence and is just and reasonable.

2. The JPS is supported by substantial evidence and produces rates that are just and reasonable for all classes of ALG's customers. Therefore, the JPS is in the public interest and is hereby approved.

3. ALG is hereby authorized to prepare and file in this docket proposed tariffs designed to properly reflect the terms of the JPS.

On January 19, 1993, the Attorney General petitioned for rehearing of Order No. 13, and when its petition was deemed denied, the Attorney General filed his notice of appeal.

■    We first address the Attorney General's argument that the Commission did not have the authority to approve the JPS over the objection of the Attorney General. Arkansas Code Annotated

§ 23-2-301 (1987) vests the Commission with the power and jurisdiction, and makes it the Commission's duty, "to supervise and regulate every public utility defined in § 23-1-101 and to do all things, whether specifically designated in this act, that may be necessary or expedient in the exercise of such power and jurisdiction, or in the discharge of its duty." The Commission was created to act for the General Assembly, and it has the same powers that body would have when acting within the powers conferred upon it by legislative act. *Southwestern Bell Tel. Co.* v. *Arkansas Pub. Serv. Comm'n*, 267 Ark. 550, 557-59, 593 S.W.2d 434, 440 (1980).

■■ The Attorney General contends that he is the sole party to the proceeding representing the interests of the Arkansas ratepayers and that no authority exists giving the Commission permission to approve a stipulation over the ratepayers' objections. The fact that Ark. Code Ann. § 23-4-303 (1987) gives the Attorney General the power to represent all classes of utility ratepayers before the Commission does not mean that the Attorney General has veto power over the methodology employed by the Commission in setting rates. The Commission has broad discretion in choosing an approach to rate regulation and is free, within its statutory authority, to make any reasonable adjustments which may be called for under particular circumstances. *Associated Natural Gas Co.* v. *Arkansas Pub. Serv. Comm'n*, 25 Ark. App. 115, 118, 752 S.W.2d 766, 767 (1988). "Authority to advocate a position on behalf of small businesses and residential consumers is not equivalent to authority to decide what is in the public's best interest." *City of El Paso* v. *Public Util. Comm'n*, 839 S.W.2d 895, 905 (Tex. Ct. App. 1992).

■ The Attorney General also contends that the Commission is bound by the same limitations that courts of law are in accepting settlements of the parties. This argument, however, ignores the distinction between settlements in the administrative law setting from settlements in civil actions:

It is well to note at the outset that "settlement" carries a different connotation in administrative law and practice from the meaning usually ascribed to settlement of civil actions in a court. As we shall see later, in agency proceedings settlements are frequently suggested by some,

but not necessarily all, of the parties; if on examination they are found equitable by the regulatory agency, then the terms of the settlement form the substance of an order bind-ing on all the parties, even though not all are in accord as to the result. This is in effect a "summary judgment" granted on "motion" by the litigants where there is no issue of fact.

This difference in procedure between the courts and regulatory agencies stems from the different roles each is empowered to play: the court must passively await the appearance of a litigant before it; once the court's process has been invoked, the litigant is entitled to play out the contest, unless he and the other litigant reach a mutually agreed settlement or one of several summary disposition procedures is successfully invoked by his adversary. On the other hand, the regulatory agency is charged with a duty to move on its own initiative where and when it deems appropriate; it need await the appearance of no litigant nor the filing of any complaint; once the administrative process is begun it may responsibly exercise its initiative by ter-minating the proceedings at virtually any stage on such terms as its judgment on the evidence before it deems fair, just, and equitable, provided of course the procedural requirements of the statute are observed. Only by exercis-ing such "summary judgment" or "administrative settle-ment" procedures when called for can the usual inter-minable length of regulatory agency proceedings be brought within the bounds of reason and the agencies' competence to deal with them.

Whether the summary action of any agency in a par-ticular case is fair, just, equitable, and in accord with the procedure required by law is a matter for judicial review, as in the case at bar.

*Pennsylvania Gas and Water Co.* v. *Federal Power Comm'n*, 463 F.2d 1242, 1246 (D.C. Cir. 1972).

■■ The Attorney General also argues that Rule 3.10 of the Commission's Rules of Practice and Procedure supports his argument that the Commission could not adopt a non-unanimous stipulation. This rule provides:

> All parties to any proceeding or investigation before the Commission may, by written stipulation filed with the Commission or entered in the record, agree upon the facts or any portion thereof involved in the controversy, which stipulation shall be regarded and used as evidence at the hearing. It is desirable that the facts be thus agreed upon whenever practicable. The Commission may, in such cases, require and introduce such additional evidence as it may deem necessary.

The Attorney General construes this rule to require all parties to consent to a stipulation before it can be considered by the Commission. The Commission, however, interprets this rule to urge the Commission to consider a stipulation of the parties and not to mandate that all parties must consent to a stipulation before it can be considered. An agency's or department's interpretation of its own rules and regulations is not binding upon the courts but is nevertheless highly persuasive; the agency's interpretations of its own rules is controlling unless plainly erroneous or inconsistent. General Tel. Co. of the Southwest v. Arkansas Pub. Serv. Comm'n, 23 Ark. App. 73, 87, 744 S.W.2d 392, 400 (1988), aff'd 295 Ark. 595, 751 S.W.2d 1 (1988). We cannot say the Commission's interpretation is clearly erroneous.

Moreover, the situation here is not a first occurrence which may be regarded as unique. The Attorney General has participated in non-unanimous stipulations in past proceedings before the Commission. *See Arkansas Electric Energy Consumers v. Arkansas Public Service Commission*, 35 Ark. App. 47, 813 S.W.2d 263 (1991), where this Court affirmed the Commission's approval of a stipulation which had been entered into by AP&L, the Attorney General, and Staff, but not by Arkansas Energy Consumers. Although the question of whether a stipulation required unanimous support of the parties was not raised on appeal in that case, the appellant, AEEC, did argue that the Attorney General, by supporting the settlement, failed to provide effective and aggressive representation for the people of Arkansas. This Court held, however, that throughout the agreement were recitations as to why the public interest would be served by its adoption and that the Attorney General was attempting to fulfill his mandate by signing it.

The adoption of non-unanimous stipulations has also been approved in other jurisdictions. In *Mobil Oil Corporation* v. *Federal Power Commission*, 417 U.S. 283, 312-14 (1974), the Supreme Court held that the Federal Power Commission has the authority to adopt as a rate order a settlement proposal which lacked unanimous agreement of the parties to the proceeding and that the choice of an appropriate structure for the rate order is a matter of Commission discretion, to be tested by its effects; the choice is not the less appropriate because the Commission did not conceive of the structure independently. *See also Attorney General of New Mexico* v. *New Mexico Pub. Serv. Comm'n*, 111 N.M. 636, 808 P.2d 606, 610-11 (1991). *See also Cities of Abilene* v. *Public Util. Comm'n of Texas*, 854 S.W.2d 932, 939 (Tex. Ct. App. 1993); *City of El Paso* v. *Public Util. Comm'n*, 839 S.W.2d at 903.

We hold that the Commission's statutory authority is clearly broad enough to allow the Commission to *consider* stipulations entered into by some of the parties to a proceeding in approaching rate regulation. Of course, the Commission must afford a non-stipulating party adequate opportunity to be heard on the merits of the rate application and the stipulation agreed to by some of the parties, and the Commission must make an independent finding, supported by substantial evidence, that the stipulation resolves the issues in dispute in a way which is fair, just and reasonable, and in the public interest. *See Mobil Oil Corp.* v. *Federal Power Comm'n*, 417 U.S. at 312-14; *Attorney General of New Mexico* v. *New Mexico Pub. Serv. Comm'n*, 808 P.2d at 610; *accord Arkansas Elec. Energy Consumers* v. *Arkansas Pub. Serv. Comm'n*, 35 Ark. App. at 65-73, 813 S.W.2d at 274.[2]

The Attorney General also argues that, at the hearing held on November 2, the Commission erroneously shifted the burden of proof from ALG to the Attorney General. The burden of justifying any change in rates is on the party seeking the change. *See General Tele. Co. of the Southwest* v. *Arkansas Pub.*

---

[2]Nothing in this opinion, however, should be read to suggest that a settlement, even if it enjoys unanimous consent of the parties, can be approved by the Commission absent an independent finding by the Commission, supported by substantial evidence, in the record, that the settlement resolves the matters in dispute in a way that is fair, just and reasonable, and in the public interest.

*Serv. Comm'n*, 23 Ark. App. at 82, 744 S.W.2d at 397. The Attorney General contends that, by considering the JPS before it considered whether ALG was entitled to a rate increase, the Commission shifted the burden to the Attorney General to prove that the JPS was not in the public interest rather than requiring ALG to justify its need for an increase in rates. In support of this contention, the Attorney General contends that the Commission only conducted a summary hearing for the sole purpose of considering the JPS; that neither ALG, Staff, nor AGC put on any witnesses on the rate case and instead relied on "unsworn, prefiled testimony," and that, at the end of the hearing, the Commission only requested briefs on whether the stipulation was in the public interest and whether it could be approved over the objection of the Attorney General but did not request briefs on ALG's rate increase.

The Attorney General's argument, however, disregards over 1,500 pages of prepared testimony and 886 pages of accompanying exhibits which were introduced into evidence at the hearing before the Commission ever considered the JPS. The Attorney General does not argue that this "unsworn testimony," which was admitted into evidence without objection, was not sufficient to meet ALG's burden, nor has he cited any authority for his suggestion that it is not credible evidence. From this evidence alone, the Commission could have found that ALG had met its burden of proving it was entitled to a rate increase. Moreover, in addition to this substantial prefiled evidence, four witnesses testified at the hearing in support of the JPS which included increased rates for ALG. This testimony not only addressed the merits of the JPS but also ALG's underlying request for a rate increase and reallocation.

The Attorney General complains that ALG did not carry its burden because it did not orally present the testimony of every witness who had submitted prefiled testimony in this docket, although these witnesses were present at the hearing. The Attorney General also complains that Staff did not choose to cross-examine any of ALG's witnesses and therefore this burden then fell on the Attorney General. While the Attorney General may have been relying on Staff to carry the burden of disputing ALG's evidence, Staff's refusal to cross-examine does not mean that ALG did not carry its burden of proving it was entitled to a rate increase.

Furthermore, contrary to the Attorney General's allegation, Staff witness Donna Campbell testified at the hearing in support of ALG's rate increase. From our review, we cannot say that the Commission shifted the burden of proof or that ALG failed to meet its burden of proof.

For his third point, the Attorney General argues that he was denied due process because his right to a hearing on ALG's rate application was denied. The Attorney General contends that, because at the beginning of the hearing on ALG's rate application the Commission announced that it would hear testimony in support of and opposition to the JPS, a hearing was not conducted on ALG's rate application thereby denying him his right to a full and fair hearing.

A fundamental requirement of due process in matters of public utility regulation is a full and fair hearing, and the basic elements of a full and fair hearing are that all those whose rights are involved have the opportunity to be heard, to submit evidence and testimony, to examine witnesses and present evidence or testimony in rebuttal to adverse positions. *Arkansas Elec. Energy Consumers* v. *Arkansas Pub. Serv. Comm'n*, 35 Ark. App. at 64, 813 S.W.2d at 273. The Attorney General, in attacking the procedure before the Commission as a denial of due process, has the burden of proving its invalidity. *Id.* at 64-65, 813 S.W.2d at 273.

All the parties' witnesses were present at the hearing. The Attorney General had the opportunity to cross-examine any witness with reference to their view on both the JPS and ALG's rate request. In fact, the Commission, during the course of the hearing, advised the Attorney General that this was his opportunity to cross-examine any of the witnesses on any matters concerning ALG's rate application and the JPS. The fact that the Commission chose to hear testimony regarding the JPS at the hearing on ALG's rate application does not mean that the Commission proceedings were limited to consideration of the JPS.

The rates and proposals included in the JPS are clearly within the parameters of testimony filed by ALG and Staff and are equivalent to testimony in support of ALG's need for a rate increase. As such, it was not improper for the Commission to consider it at the beginning of the hearing. The Commission is not bound to consider the evidence before it in any par-

ticular order. The Commission has wide discretion in choosing its approach to rate regulation, and it is not our function to advise the Commission as to how to make its findings or exercise its discretion. *See Southwestern Bell Tel. Co.* v. *Arkansas Pub. Serv. Comm'n*, 24 Ark. App. 142, 144, 751 S.W.2d 8, 9 (1988). As trier of fact in rate cases, it is within the province of the Commission to decide on the credibility of witnesses, the reliability of their opinions, and the weight to be given their evidence. *Associated Natural Gas Co.* v. *Arkansas Pub. Serv. Comm'n*, 25 Ark. App. at 124, 752 S.W.2d at 771. The Attorney General was afforded every opportunity to participate in the proceedings below, and we cannot agree that he was denied a full and fair hearing on ALG's rate application or the JPS.

The Attorney General also contends that he was not provided proper notice of the rates established by the JPS or the hearing on the JPS. Although the Attorney General acknowledges that proper notice was given of the hearing on ALG's application for a rate increase, he contends that separate notice was required for the Commission's consideration of the JPS because it contains rates different than those requested in ALG's original application. The Attorney General cites several statutes and Commission rules in support of this argument; however, we do not agree they would require separate notice in the situation at bar. The rates included in the JPS are lower than those sought by ALG in their application and prefiled testimony and higher than those recommended originally by Staff; therefore, the Attorney General and other interested parties had notice of the range of rates likely to be involved at the hearing. The Attorney General was also aware of the negotiations between the parties because he was invited to take part in them, although he declined to do so. Therefore, he cannot claim surprise. More importantly, although the Attorney General objected to the Commission's consideration of the JPS, he failed to raise the issue of lack of proper notice at the hearing and, therefore, has not preserved this issue for appeal. Arguments raised for the first time on appeal are not considered. *Arkansas Elec. Energy Consumers* v. *Arkansas Pub. Serv. Comm'n*, 35 Ark. App. at 66, 813 S.W.2d at 274.

For his final point, the Attorney General challenges the sufficiency of the evidence supporting the rate increase granted to ALG, which is the amount suggested in the JPS. The Attorney

General argues that the JPS is merely a summary of the blended positions of ALG, AGC, and Staff and that nowhere either in the "unsworn prefiled testimony" or the "summary" proceeding before the Commission is there substantial evidence to support the JPS. Specifically, the Attorney General contends that the $13.5 million revenue deficiency, the 9% pre-tax rate of return, the allocation of LUFG[3] in rates, the customer charge, the method and numbers on the cost allocation, the class allocation methodology, and the pre-tax return on the Cast Iron Gas Main Replacement Program (CIGMRP) proposal are not supported by any evidence in the record.

Our review of appeals from the Public Service Commission is limited by the provisions of Ark. Code Ann. § 23-2-423(c)(3), (4), and (5) (Supp. 1993), which defines our standard of review as determining whether the Commission's findings of fact are supported by substantial evidence, whether the Commission has regularly pursued its authority, and whether the order under review violated any right of the appellant under the laws or the Constitutions of the State of Arkansas or the United States. *Associated Natural Gas Co.* v. *Arkansas Pub. Serv. Comm'n*, 25 Ark. App. 115, 118, 752 S.W.2d 766, 767 (1988). If an order of the Commission is supported by substantial evidence and is neither unjust, arbitrary, unreasonable, unlawful, or discriminatory, then the appellate court must affirm the Commission action. *Arkansas Elec. Energy Consumers* v. *Arkansas Pub. Serv. Comm'n*, 35 Ark. App. 47, 76, 813 S.W.2d 263, 277 (1991). The appellate court views only the evidence most favorable to the appellee in cases presenting questions of substantial evidence, *id.*, and the burden is on the appellant to show a lack of substantial evidence to support an administrative agency's decision. *See City of El Paso* v. *Public Util. Comm'n of Texas*, 839 S.W.2d 895, 906 (Tex. Ct. App. 1992).

In reviewing the sufficiency of the evidence to support Order No. 13, it is appropriate for this Court to consider the JPS; as it is the functional equivalent of testimony in support of the rates it establishes by the parties proposing it. The JPS is therefore evidence that the rates included in it are just and rea-

---

[3]LUFG is the difference between the total volume of gas purchased from all sources and the volume delivered and billed to customers.

sonable. *See Cities of Abilene* v. *Public Util. Comm'n of Texas*, 854 S.W.2d 932, 938-39 (Tex. Ct. App. 1993).

The Attorney General argues that the Commission merely rubber-stamped the JPS and made no independent findings that the rates established by the JPS are just and reasonable. The Attorney General contends that Staff's agreement to allow ALG an increase of $13.5 million in additional rates, which is a $2.5 million increase over the $11.1 million Staff recommended in its prefiled testimony, is without evidentiary support. Although the Attorney General acknowledges that there is evidence in the record that supports rates higher and lower than those included in the JPS, he claims that, because there is no evidence in the record that supports the exact figures adopted by the JPS, it is not supported by substantial evidence. This argument is without merit.

The JPS represents a compromise of the parties' relative positions on different issues. As the Commission correctly noted, it could have adjudicated a result similar to the JPS had there not been a proposed settlement. To hold that the Commission could not adopt the JPS because no party in the prefiled testimony testified in support of the exact same terms as those included in the JPS would effectively eliminate the Commission's power to set rates which it finds are just and reasonable. The Commission is never compelled to accept the opinion of any witness on any issue before it, nor is it bound to accept one or the other of any conflicting views, opinions, or methodologies. *General Tel. Co.* v. *Arkansas Pub. Serv. Comm'n*, 23 Ark. App. at 83, 751 S.W.2d at 397-98.

We also note that, in arguing that the JPS is not supported by substantial evidence, the Attorney General challenges individual elements of the JPS rather than its effect as a whole. However, if the total effect of a rate order cannot be said to be unjust, unreasonable, unlawful, or discriminatory, judicial inquiry is concluded. *Southwestern Bell Tel. Co.* v. *Arkansas Pub. Serv. Comm'n*, 267 Ark. 550, 568, 593 S.W.2d 434, 445 (1980).

The Commission had for its consideration the voluminous prefiled testimony and exhibits which were admitted into evidence at the beginning of the hearing without objection. Throughout Order No. 13, the Commission not only makes numerous fac-

tual findings but also refers to specific pages in the prefiled testimony of various witnesses in support of ALG's entitlement to a rate increase and reallocation of its rates among its various classes of customers. It is evident from reading Order No. 13 that the Commission relied on the prefiled testimony to find that the result suggested by the JPS was in the public interest. Furthermore, Staff witness Donna Campbell testified at the hearing specifically in support of the rates included in the JPS. She testified that she addressed cost allocation and rate design in her direct and surrebuttal prefiled testimony and that, in the negotiation of these issues, Staff considered the cost of service, consumer impact, customer impact, and also potential bypass. She testified that the present revenue requirement charged residentials is $143,787,440.00 and that the revenue requirement under the JPS for residentials will be $160,924,311.00, which is an increase of 11.92% and that this increase would have resulted in approximately a $17.1 million increase, but that Staff and ALG settled on a revenue deficiency of approximately $13.5 million with the $4 million differential being made up by an increase for GS-1 and GS-2 customers. She also testified that the revenue requirement for residential customers which is suggested in the JPS is the same figure for that class which was developed in her surrebuttal testimony and that this figure did not change during negotiations. Attorney General witness Basil Copeland, on being questioned by the Commission, admitted that results, similar to those reached in the JPS, could have been reached by the Commission from the parties' prefiled testimony.

The evidence on which the Commission relied in finding the rates suggested in the JPS is supported by substantial evidence and that adoption of the JPS is in the public interest is reviewed in detail in Order No. 13, and for this Court to do so also is unnecessary and would unduly lengthen this opinion. Suffice it to say that we have reviewed the evidence and find that Order No. 13 is supported by substantial evidence and is not unjust, arbitrary, unreasonable, unlawful, or discriminatory, and therefore, we affirm.

Affirmed.

MAYFIELD, J., concurs.