SOUTHWESTERN BELL TELEPHONE COMPANY, et al.
*v.* ARKANSAS PUBLIC SERVICE COMMISSION, et al.

CA 95-1176                                    946 S.W.2d 730

Court of Appeals of Arkansas
Special Division
Opinion delivered June 25, 1997

*Ann E. Meuleman* and *Garry S. Wann*; and *Ivester, Skinner & Camp, P.A.*, by: *H. Edward Skinner*, for appellant Southwestern Bell Telephone Company.

*Arthur H. Stuenkel*, for appellee Arkansas Public Service Commission.

*Wright, Lindsey & Jennings*, by: *J. Mark Davis*; *Cuffman & Phillips*, by: *Stephen K. Cuffman*; and *Shults, Ray & Kurrus*, by: *H. Baker Kurrus*, for appellees AT&T Communications of the Southwest, Inc.; MCI Telecommunications Corp.; and LDDS of Arkansas, Inc.

JUDITH ROGERS, Judge. Appellants herein are twenty-eight local exchange carriers (LECs), the largest such carrier being Southwestern Bell Telephone Company (SWBT). This appeal concerns the Carrier Common Line (CCL) charges that the LECs assess the interexchange carriers (IXCs) for the IXCs' use of the LECs' facilities. The IXCs use the LECs' local loop networks in the origination and termination of long-distance toll calls and are charged intrastate access charges by the LECs. These charges are designed to recover a reasonable share of LECs' local loop network

costs and are treated by the IXCs as part of their cost of service, which they include in their toll rates. To determine the amount of CCL charges, the CCL revenue requirements are calculated annually on the basis of a formula, hereinafter referred to as the algorithm, which quantifies each LEC's operating expense, current depreciated assets, and return on the LEC's invested capital that is associated with access service to the IXCs. A 12% rate of return is used in the algorithm.

The Arkansas InterLATA Carrier Common Line Pool (AIC-CLP) was established by the Arkansas Public Service Commission (Commission) to administer the CCL revenue requirement and resulting charges. Annually, the AICCLP files tariffs with the Commission setting forth the LECs' revenue requirements for the succeeding calendar year. On November 30, 1994, SWBT as administrator of the AICCLP filed revised tariffs with the Commission setting forth the 1995 preliminary revenue requirements (and the proposed tariffs) for each LEC member of the AICCLP. Three IXCs, AT&T Communications of the Southwest, Inc., MCI Telecommunications Corporation, and LDDS of Arkansas, Inc., responded that the 12% rate of return used in the algorithm was excessive and moved to suspend the effective date of the tariff revisions pursuant to Ark. Code Ann. § 23-4-407 (1987) in order to permit an investigation and public hearing. Order No. 27 granted the IXCs' motion, suspended the tariffs pursuant to Section 23-4-407, ordered a public hearing on the proposed tariff revisions, and ordered the AICCLP, the LECs, and the other interested parties supporting the proposed tariffs to file their testimony first. In separate motions for reconsideration of Order No. 27, the General Staff of the Arkansas Public Service Commission (Staff), the LECs, and SWBT argued that the IXCs have the burden of proof in this proceeding and that they should be ordered to present their testimony first. Order No. 30 granted their petition for reconsideration. Order No. 31 held that the burden of proof that the AICCLP's tariffs are just and reasonable and in the public interest remains on the proponents of the tariff filing but adjusted the procedural schedule to require the IXCs to file testimony first in order to facilitate the development of the issues.

After testimony had been filed in the proceeding and the public hearing concluded, the Administrative Law Judge (ALJ) stated her findings in Order No. 32. She concluded that the rate of return used in the algorithm should be reduced to appropriately reflect the current cost of capital and that, based upon the record, there was substantial evidence that the AICCLP revenue rate of return should be reduced to 9.2%. The Commission in Order No. 33 adopted without modification Order No. 32. Order No. 34 denied appellants' request to stay the procedural schedule for the filing of the revised tariffs, and Order No. 36 approved the proposed tariffs utilizing the 9.2% rate of return authorized by Order No. 33. Order No. 37 denied appellants' petition for rehearing of Orders No. 33, 34, and 36. On appeal, appellants argue five points for reversal.

This court's review of appeals from the Commission is limited by the provisions of Ark. Code Ann. § 23-2-423(c)(3) and (4) (Supp. 1995), which provide:

> (3) The finding of the commission as to the facts, if supported by substantial evidence, shall be conclusive.

> (4) The review shall not be extended further than to determine whether the commission's findings are supported by substantial evidence and whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violated any right of the petitioner under the laws or Constitution of the United States or of the State of Arkansas.

See *Bryant v. Arkansas Pub. Serv. Comm'n*, 54 Ark. App. 157, 924 S.W.2d 472 (1996). The Commission has broad discretion in exercising its regulatory authority, and courts may not pass upon the wisdom of the Commission's actions or say whether the Commission has appropriately exercised its discretion. *Bryant v. Arkansas Pub. Serv. Comm'n*, 55 Ark. App. 125, 931 S.W.2d 795 (1996). "This Court has often said that, if an order of the Commission is supported by substantial evidence and is neither unjust, arbitrary, unreasonable, unlawful, or discriminatory, then this court must affirm the Commission's action." *Id.* at 135.

Appellants' first point concerns their contention that the Commission failed to regularly pursue its authority by engaging in single-issue ratemaking. Appellants state that the algorithm is composed of numerous separate components or allocation factors, that all components are interdependent on each other, and that a change in one component may necessitate a change in another component. Unlike a traditional rate case in which the relevant ratemaking factors consist solely of various items associated with rate base, test-year revenues, test-year expenses, and rate of return, appellants argue that the relevant ratemaking factors in the instant case also include the various components of the algorithm as well as other non-algorithm components such as "IXC credits" that the Commission should have considered before reducing the CCL rate of return. Appellants conclude that, by considering the 12% rate-of-return component of the algorithm in isolation, the Commission engaged in single-issue ratemaking.

The Commission addressed appellants' single-issue ratemaking argument in Order No. 37:

> The Commission has the statutory authority and jurisdiction to create the AICCLP and to prescribe its rates. Historically, the annual revenue requirement of the AICCLP has been considered on a stand alone basis which has resulted in increases in access rates to recover increases in non-traffic sensitive (NTS) costs recovered through the AICCLP. As Staff points out in its Response, the Commission also allows "LECs to increase the traffic sensitive portion of their access rates through parity filings in Docket 86-160-U" and such "rate increases to the LECs were allowed on a stand alone basis, without regard to the revenue requirements of the respective LECs." However, it is apparent from the LECs' Petitions that their position is that "single issue ratemaking" becomes unlawful when it results in a decrease in rates. AT&T, MCI & LDDS point out that "the LECs' unified theory of ratemaking, if carried to its logical extreme, results in the conclusion that the Arkansas Intrastate Carrier Common Line Pool, and the tariffs establishing CCL revenues and the monthly CCL rate to be charged by LECs, are themselves the product of "single issue ratemaking". Consequently, LECs must also conclude that the AICCLP and its monthly CCL rate are unlawful."

The term single-issue ratemaking was first used by appellants in their petition for rehearing of Order No. 33. They stated that single-issue ratemaking occurs "when the Commission has failed to consider *all* relevant ratemaking factors in setting a utility's rates." No Arkansas statute or Arkansas case discusses single-issue ratemaking. Single-issue ratemaking is discussed in *Citizens Utility Board v. Illinois Commerce Commission*, 166 Ill.2d 111, 651 N.E.2d 1089 (1995); *Business and Professional People for the Public Interest v. Illinois Commerce Commission*, 146 Ill.2d 175, 585 N.E.2d 1032 (1991); *State ex rel. Utility Consumers Council of Missouri, Inc. v. Public Service Commission of Missouri*, 585 S.W.2d 41 (Mo. 1979); and *Pennsylvania Indus. Energy Coalition v. Pennsylvania Pub. Util. Comm'n*, 653 A.2d 1336, 1350 (Pa. Commw. Ct. 1995), *aff'd*, 670 A.2d 1152 (Pa. 1996). Our review of these cases, however, does not lead us to conclude that "prohibited single-issue ratemaking" occurred in this situation.

■ Unfortunately, the Commission's orders that established the AICCLP and the CCL charges prior to SWBT's filing of the AICCLP's November 1994 tariff have not been included in the record despite the fact that appellants clearly recognized that these orders were necessary to this court's understanding of the facts of this appeal. In this court's letter order of February 21, 1996, we denied appellants' motion to file a brief with these orders appended; however, we did so without prejudice to appellants' filing a motion to supplement the record. No such motion was ever filed. Therefore, this court is unable to determine whether the various components of the AICCLP have been determined in the past on a single-issue basis and we must defer to the Commission's discretion in this regard.

■ Furthermore, we disagree with appellants' allegation that the rate-of-return component of the algorithm was considered by the Commission in isolation. It was appellants' burden to prove that their November 1994 tariffs were just and reasonable and in the public interest.[1] They were allowed to file exhibits and

---

[1] Orders No. 27 and 31 of this docket held that the burden of proof was on appellants to show that the proposed November 1994 tariffs were just and reasonable. Appellants have not appealed these orders.

testimony in this regard, and a public hearing was also held in which witnesses testified regarding their prefiled testimony and the parties were allowed to cross-examine the witnesses. Appellants have not directed this court to any of the Commission's rulings showing that they were limited in any manner from producing evidence in support of the proposed tariffs, nor did they produce any evidence of the other relevant factors that they contend the Commission should have considered. It is apparent, however, that other factors were in issue as evidenced by MCI's challenge to the inter/intra allocation factors used in the algorithm. Orders No. 32 and 33 also refute appellants' contention that other components that impact appellants' costs for CCL service such as Commission-ordered credits and universal service were not considered by the Commission. In sum, appellants have failed to show that the Commission engaged in single-issue ratemaking.

The appellants further argue that the Commission failed to pursue its authority regularly by not first determining whether the appellants were earning more than a reasonable rate of return before ordering a reduction in their CCL revenue requirements. The Commission adequately dealt with this argument in Order No. 37:

> All twenty-three (23) LECs were provided notice of the suspension of the CCL tariff and the issue of the CCL revenue requirement which resulted in the suspension of the tariff on December 30, 1994. All the LECs were given an opportunity to be heard, but not a single LEC produced any evidence that a reduction of the AICCLP rate of return would result in that LEC's failure to earn its allowed rate of return. Substantial evidence requires more than a generic assertion that one of the LECs might at some future time not earn its allowed rate of return.

The burden was on appellants at the hearing to justify the revised tariffs included in the AICCLP's November 1994 filing and to show that without such rates they would be unable to earn their allowed rate of return. *General Tel. Co. of the SW v. Arkansas Pub. Serv. Comm'n*, 23 Ark. App. 73, 744 S.W.2d 392 (1988), *aff'd*, 295 Ark. 595, 751 S.W.2d 1 (1988). This in part stems from the fact that appellants had possession of all pertinent records. *Accord City of El Dorado v. Arkansas Pub. Serv. Comm'n*,

235 Ark. 812, 362 S.W.2d 680 (1962). The appellants have not cited us to any evidence that was before the Commission that demonstrates they will be unable to earn a reasonable rate of return as a result of the Commission's decision to reduce the rate-of-return component of the CCL formula. The appellants' conclusion that they have no reasonable prospect of achieving their allowed rate of return unless they are allowed to increase their rates by a corresponding amount for another service is supposition and not evidence. In fact, the testimony is disputed as to whether appellants will even suffer any revenue loss as a result of the rate-of-return reduction.

Ratemaking is a legislative, not a judicial, function, and every rate order may be superseded by another, not only when conditions change, but also when the administrative understanding of the same conditions changes. *See Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n,* 267 Ark. 550, 593 S.W.2d 434 (1980). This court has repeatedly held that the Public Service Commission has wide discretion in choosing its approach to rate regulation, and the appellate court does not advise the Commission concerning how to make its findings or exercise its discretion. *Bryant v. Arkansas Pub. Serv. Comm'n,* 50 Ark. App. 213, 907 S.W.2d 140 (1995). The appellate court is generally not concerned with the method used by the Commission in calculating rates as long as the Commission's action is based on substantial evidence and the total effect of the rate order is not unjust, unreasonable, unlawful, or discriminatory. *See Bryant v. Arkansas Pub. Serv. Comm'n,* 57 Ark. App. 73, 941 S.W.2d 452 (1997). Here, substantial evidence existed to support the Commission's reduction in the AICCLP's rate of return, and appellants have not come forward with any evidence to show the reduction is unjust, unreasonable, unlawful, or discriminatory.

For their second point, appellants contend that the Commission denied appellants due process of law by refusing to implement a mechanism for concurrent rate relief. They contend that, because the Commission failed to evaluate the appellants' needs for rate relief to recover the revenues lost as a result of the reduction of the rate of return, the Commission in effect took their property without due process of law and that nowhere is the

Commission given taking authority. We do not address this argument because it was not made in appellants' petition for rehearing. Arkansas Code Annotated § 23-2-423(c)(2) (Supp. 1995), states that an objection to an order of the Public Service Commission may not be considered by the Court of Appeals unless the objection has been urged before the Commission in the application for rehearing. *See Bryant v. Arkansas Pub. Serv. Comm'n*, 57 Ark. App. at 85. In regard to appellants' argument that the Commission denied appellants due process by not evaluating appellants' need for rate relief to recover lost revenues resulting from the reduction in the AICCLP's rate of return, we note that appellants failed to produce any evidence before the Commission that they will lose revenue.

A full and fair hearing is a fundamental requirement of due process in the determination of the reasonableness of utility rates, and in order to meet due process requirements, a hearing must afford a utility the right to reasonably know the charges and the right to meet such charges by competent evidence. *Arkansas Pub. Serv. Comm'n v. Continental Tel. Co. of Ark.*, 262 Ark. 821, 561 S.W.2d 645 (1978). The opportunity to submit evidence to rebut charges or adverse claims and testimony is an essential requirement of a full and fair hearing of the due process clause of the Constitution. *Id.* Here, the evidence supports the Commission's finding that the appellants were advised of the issues before the Commission and were given the opportunity to present evidence to the Commission in support of all the components of the proposed tariffs, including the existing rate-of-return factor. The Commission correctly observed in Order No. 37 that "[t]he failure of a party to produce evidence on an issue is not a denial of due process." Where the appellants are afforded every opportunity to participate in a proceeding below, the simple fact that the outcome is not as appellants would have wished is not tantamount to a denial of due process. *See Arkansas Elec. Energy Consumers v. Arkansas Pub. Serv. Comm'n*, 35 Ark. App. 47, 813 S.W.2d 263 (1991).

Appellants for their third point argue that the Commission exceeded its jurisdiction as set forth by Ark. Code Ann. § 23-2-301 (1987) in treating the AICCLP as a stand-alone "utility busi-

ness" and by prescribing a service-specific rate of return for CCL service. That section provides "[t]he Commission is vested with the power and jurisdiction, and it is made its duty, to supervise and regulate every public utility defined in § 23-1-101. . . ." Appellants contend that, because the AICCLP has no separate legal status except for purposes of its administrative functions of filing tariffs and billing and collecting CCL revenues, it is not a public utility as defined in Section 23-1-101 and as such, it cannot lawfully have its rates prescribed by the Commission. Appellants acknowledge that the AICCLP algorithm requires the use of a target rate of return but contend that the Commission has never prescribed a separate rate of return for CCL service in a contested proceeding. They insist that the rate of return used in the AIC-CLP is simply an agreed-upon return by the parties, and the approval of these joint agreements by the Commission does not constitute a legal prescription of a service-specific rate of return for CCL service.

The Commission responded to this argument in Order No. 37:

> The Commission has the statutory authority and jurisdiction to create the AICCLP and to prescribe its rates. Historically, the annual revenue requirement of the AICCLP has been considered on a stand alone basis which has resulted in increases in access rates to recover increases in non-traffic sensitive (NTS) costs recovered through the AICCLP. As Staff points out in its Response, the Commission also allows "LECs to increase the traffic sensitive portion of their access rates through parity filings in Docket 86-160-U" and such "rate increases to the LECs were allowed on a stand alone basis, without regard to the revenue requirements of the respective LECs."

Section 23-2-301 authorizes the Commission to supervise and regulate every public utility defined in Section 23-1-101 and "to do all things, whether specifically designated in this act, that may be necessary or expedient in the exercise of such power and jurisdiction, or in the discharge of its duty." *See Bryant v. Arkansas Public Service Commission*, 46 Ark. App. 88, 94-95, 877 S.W.2d 594 (1994). The Commission was created to act for the General Assembly, and it has the same powers that that body

would have when acting within the powers conferred upon it by legislative act. *Id.* at 95.

The AICCLP has acted as a stand-alone unit in recouping the appellants' CCL costs since 1986. In relation to their CCL revenue requirements, the appellants do not act independently but through the AICCLP's filing of annual proposed rates, which is the subject matter of this docket. This court does not have for its review the prior Commission orders concerning the "agreed-upon" 12% rate of return. Assuming, however, that this rate did result from the parties' agreement, it does not change the fact that rates are still required to be approved by Commission order. *See* Ark. Code Ann. § 23-2-304 (Supp. 1995). Moreover, this court has previously held that the Commission's statutory authority is clearly broad enough to allow the Commission to *consider* stipulations entered into by some of the parties to a proceeding in approaching rate regulation. *See Bryant v. Arkansas Public Service Commission*, 46 Ark. App. at 98 (emphasis in original). The Commission must, however, make an independent finding supported by substantial evidence that the stipulation resolved the issues in dispute in a way which was fair, just, and reasonable, and in the public interest. *Id.*

Appellants' point number four is analogous to their argument of Point One. They contend that the Commission acted arbitrarily and capriciously and abused its discretion by failing to adequately address the implications of Order No. 33 on universal service and by failing to enumerate and identify explicit support mechanisms. We disagree. The ALJ discussed universal service in Order No. 32, which was adopted by the Commission in Order No. 33:

> The Commission continues to support the objective of universal service. However, universal service goals can be maintained through explicit support mechanisms instead of non-specific pooling support mechanisms. It does not have to be supported by inflated intrastate toll rates which are not beneficial to the public in a rural state where toll calls are an essential means of daily communications for many residents. Furthermore, reducing CCL charges furthers the Commission's goal of reducing the disparity between interstate toll rates and intrastate toll rates.

To set aside the Commission's action as arbitrary and capricious, the appellant must prove the action was a willful and unreasoning action made without consideration and with a disregard of the facts and circumstances of the case. *Bryant v. Arkansas Pub. Serv. Comm'n*, 54 Ark. App. 157, 924 S.W.2d 472 (1996). Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis and something more than mere error is necessary to meet the test. *Id.* The ALJ recognized the objectives of the universal fund, but she also recognized the rapid changes in the telecommunications industry. The General Assembly also recognized these changes when it passed Act 238 of 1993, codified at Ark. Code Ann. § 23-2-304(b). The emergency clause to that act states:

> It is hereby found and determined by the General Assembly that because of competitive and technological changes relating to telecommunications services, it is essential that the Arkansas Public Service Commission be authorized to deviate from the rate/base rate of return method of regulation in establishing rates and charges for such services; that it is in the best interest of the public that this authority be granted at the earliest possible date to enable the commission to more equitably establish a system of rates and charges for telecommunications services and that this act is designed to grant such authority and should be given effect immediately.

For their final point, appellants argue that the Commission's failure to consider the IXCs' credits in setting the 9.2% rate of return was arbitrary and capricious. Appellants claim that these credits reduce the total AICCLP revenue requirement allocated to the IXCs by $5.2 million annually, thereby reducing the effective rate of return paid by the IXCs from 12% to 6.45%. The appellants argue that using a 9.2% rate of return without making any adjustment to these credits will produce an earned rate of return significantly below SWBT's current 6.45% rate of return and violates the prohibition against confiscatory ratemaking.

We are hampered in discussing these credits because none of the Commission's orders granting the IXCs such credits are included in the record. It is apparent from the testimony, however, that the IXCs' credits appellants discuss were issued in

other dockets and used as offsets against the IXCs' AICCLP payments. Both AT&T witness Arthur Lerma and SWB witness Paul Waits testified that the IXC credits are not part of the algorithm used to develop the AICCLP revenue requirement. Waits testified:

> The majority of them came out of a docket where the Commission wanted to reduce intraLATA toll rates. It might have been from a Southwestern Bell case. I can't recall for sure. But when we settled it, the interexchange carriers intervened and said we want some access charge reductions as part of this deal.

Lerma testified that a "good number" of the IXC credits were the result of overearnings investigations, that the remainder are a combination of credits from SWB and other ordered credits related to changes in the toll pool, and that the credits are separate from the AICCLP revenue requirement. The ALJ discussed these credits in Order No. 32:

> The LECs raised two points regarding any reduction in the AICCLP rate of return. First, the LECs allege that credits flowed through the AICCLP should be reduced or eliminated if the rate of return is reduced. The credits addressed by the LECs are the result of findings by the Commission in a number of other dockets. Some credits are the result of company specific earnings reviews and other credits are the product of generic toll reductions. Other than a desire not to have the AICCLP revenue requirement reduced, the LECs have presented no evidence that any orders establishing the credits should be modified or overturned. Nor have the LECs presented any evidence that these credits which were the result of findings and orders in other dockets are within the scope of this proceeding and subject to consideration herein.

The Commission adopted Order No. 32 and concluded that it was not appropriate to consider these credits in setting the 9.2% rate of return. From the limited information we have before us concerning these credits, we cannot conclude that the Commission acted arbitrarily and capriciously.

In Order No. 32, the ALJ reviewed the testimony that supported the reduction in the rate-of-return component, and it would unduly lengthen this opinion to repeat the testimony here.

Suffice it to say that substantial evidence existed in the record to support the Commission's finding that the 12% rate of return should be reduced to 9.2%. The orders of the Commission are therefore affirmed.

Affirmed.

JENNINGS, STROUD, CRABTREE, MEADS, and ROAF, JJ., agree.