ALLTEL ARKANSAS, INC., *et al. v.*
ARKANSAS PUBLIC SERVICE COMMISSION, *et al.*

CA 00-855 69 S.W.3d 889

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered March 13, 2002

*Stephen B. Rowell;* and *Friday, Eldredge & Clark,* by: *Kevin A. Crass* and *R. Christopher Lawson,* for appellant Alltel Arkansas, Inc. and Alltel Communications, Inc.

*Cynthia Barton* and *H. Edward Skinner, P.A.,* by: *H. Edward Skinner* and *Monica L. Mason,* for appellant Southwestern Bell Telephone Co.

*Mark Pryor,* Att'y Gen., by: *Eric B. Estes,* Ass't Att'y Gen., for appellant Consumer Utilities Rate Advocacy Division.

*Paul J. Ward,* for appellee Arkansas Public Service Commission.

*Chisenhall, Nestrud & Julian, P.A.*, by: *Lawrence E. Chisenhall, Jr.* and *Mark W. Hodge*, for GTE Southwest Inc.; GTE Arkansas Inc.; GTE Midwest Inc.; CenturyTel of Northwest Arkansas, LLC; and CenturyTel of Central Arkansas, LLC.

OLLY NEAL, Judge. This appeal comes from a Public Service Commission (PSC) order approving the sale of assets by one telecommunications utility to another. In 1999, GTE Southwest, Inc., GTE Arkansas, Inc., and GTE Midwest, Inc. (hereafter "GTE"), sold 213,000 lines and accompanying plants and equipment to CenturyTel of Northwest Arkansas, LLC and CenturyTel of Central Arkansas, LLC (hereafter "CenturyTel"). The sale was opposed by appellants Alltel Arkansas, Inc., Alltel Communications, Inc. (collectively "Alltel"), and Southwestern Bell Telephone Company because, in connection with the sale, CenturyTel proposed to raise the rates it charged those companies for intrastate switched-access service.[1] Appellants argue on appeal that the order approving the sale should be overturned. We vacate the orders appealed from and remand the case to the Commission.

On June 29, 1999, CenturyTel entered into an agreement to purchase GTE's assets for $843.3 million. The companies petitioned the PSC for approval of the sale, pursuant to Arkansas Code Annotated section 23-3-102 (1987), which requires that utility asset transfers be consistent with the public interest. The petition stated that the sale was consistent with the public interest because CenturyTel focused on rural and small-town markets, which were the types of lines purchased from GTE, and because CenturyTel intended to open greeter stations and retail stores in local service areas, broaden the availability of customer services, and offer employment to GTE workers. The application further stated that CenturyTel would maintain the current GTE rates for local and toll service. However, with regard to switched-access rates, the petition stated: "CenturyTel intends to comply with the Commission's Order in Docket No. 83-042-U, Order No. 56."

The underlying import of that phrase was that CenturyTel planned to calculate and file its switched-access rates based on

---

[1] This is a per-minute rate charged by local exchange carriers such as GTE and CenturyTel to long distance carriers and other phone companies for using that local exchange carrier's switches and wires to originate and terminate their customers' calls. Intrastate rates are charged by the local exchange carrier based on the use of its equipment for intrastate calls; intrastate rates are regulated by the PSC. Interstate switched-access rates, for interstate calls, are regulated by the FCC.

Order 56 and a connected order, known as the parity order, entered in Docket No. 83–042–U. The parity order (Order No. 37) provided that intrastate access rates must be the same as, *i.e.*, in parity with, interstate access rates. The order was entered in 1986 as the result of a signed agreement executed by several telecommunications companies in existence at the time. However, the order no longer applies to most companies who, having chosen alternative regulation under the Act 77 of 1997, are not subject to it. However, GTE did not choose alternative regulation but remained rate-of-return regulated, and was thus subject to the parity order. CenturyTel, as GTE's successor-in-interest, also claims to be subject to the parity order. The significance is that CenturyTel's use of the parity order will result in a substantial increase in intrastate switched–access rates. This may be explained as follows. At the time of the sale, GTE's interstate switched–access rates were regulated by the FCC on a price cap, rather than a rate-of-return basis.[2] CenturyTel asked the FCC for permission to convert from price-cap to rate-of-return regulation. Rate-of-return regulation is accomplished in the federal jurisdiction with the assistance of the NECA, a non-profit corporation. The NECA divides companies that charge switched–access rates into groups, based on the similarity of their costs of doing business. Each similar group is assigned to a band, which establishes an access rate that is to be charged by all companies in the band. CenturyTel asked the NECA to assign it to a band if the FCC granted the price–cap waiver. This was eventually accomplished.

Because of the manner in which certain types of costs were allocated in the federal jurisdiction, CenturyTel's conversion from price-cap to rate-of-return regulation meant that its interstate switched–access rates would almost double the rates that GTE had charged. Consequently, use of the parity order meant that intrastate rates would also increase correspondingly.

Appellants Alltel and Southwestern Bell suspected that the mention of Docket 83–042–U in the application meant that CenturyTel would attempt to use the parity order to raise rates. They intervened and argued that, because of the potential switched–access

---

[2] When a utility is rate-of-return regulated, it is allowed to charge rates that would permit it to recover its costs, plus a reasonable rate of return. Such regulation necessarily calls for the regulatory authority to scrutinize the utility's costs of doing business. By contrast, price-cap regulation does not concern itself with a utility's costs. Instead, the regulatory authority simply establishes a maximum rate that may be charged for a particular service, with allowances for inflation.

rate increase, the sale was inconsistent with the public interest. They further contended that the parity order should either be rescinded or declared inapplicable and that the PSC had an obligation to set rates not by mere reliance on the parity order but by determining if the rates proposed by CenturyTel were just and reasonable. Later in the case, the Consumer Utilities Rate Advocacy Division of the Attorney General's office intervened to assert that proper notice of a potential rate increase had not been given as required by law.

Following a hearing, the PSC entered Order No. 15 approving the sale and refusing to rescind the parity order. The order did not expressly approve a rate increase because, at the time it was entered, NECA had not assigned a band to CenturyTel, nor had the FCC approved a price-cap waiver; thus, CenturyTel had not yet filed the actual rates it proposed to charge.[3] Alltel, Southwestern Bell, and the Attorney General's office appeal from that order and Order No. 16 denying their petitions for rehearing.

 Our review of appeals from the PSC is limited by Arkansas Code Annotated section 23-2-423(4) (Supp. 2001), which provides that judicial review shall not be extended further than to determine whether the Commission's findings are supported by substantial evidence and whether the Commission has regularly pursued its authority, including a determination of whether the order under review violated any rights of the appellants under the laws or constitutions of the United States or the State of Arkansas. *See Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*, 69 Ark. App. 323, 13 S.W.3d 197 (2000). The PSC has broad discretion in exercising its regulatory authority, and we may not pass upon the wisdom of the Commission's actions or say whether the Commission has appropriately exercised its discretion. *Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*, 58 Ark. App. 145, 946 S.W.2d 730 (1997). We have often said that, if an order of the Commission is supported by substantial evidence and is neither unjust, arbitrary, unreasonable, unlawful, or discriminatory, then we must affirm the Commission's action. *Id.* The Commission's action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis, and something more than mere error is necessary to meet the test. *Bryant v. Arkansas Pub. Serv. Comm'n*, 55 Ark. App. 125, 931 S.W.2d 795 (1996).

---

[3] Those rates were ultimately filed and approved in the dockets that are the subject of the companion appeal, *Consumer's Utility Rate Advocacy Division, et al. v. Arkansas Public Service Commission*, No. CA00-1109, also handed down today.

We have been asked by appellants to address several arguments involving the application of the parity order in this case. Among those arguments are that the parity order should be rescinded because the reasons that led to its entry no longer exist in the current regulatory environment and that the order does not apply to CenturyTel because CenturyTel was not a party to it. A crucial inquiry on the latter point is whether the order was intended to be applicable only to those who were parties to Docket 83-042-U or whether it was intended to be applied as a general rule, to be used by future telecommunications companies as well. Unfortunately, the record is not developed enough for us to answer these questions. The parity order is not abstracted nor is it a part of the record. Further, the testimonial evidence tells us little more than the basic rationale behind the order. Consequently, we do not know all the considerations that led to the parity order, nor the identity of all parties to it, nor whether it was intended to be applied on a limited or an industry-wide basis. If we are to address the continued viability of this order, we must have it before us and evidence of how it was intended to operate.

█ Appellants also argue that the Commission abdicated its responsibility to ensure that rates charged by utilities (other than alternatively-regulated utilities) are just and reasonable. Arkansas Code Annotated section 23-4-103 (1987) provides that all rates received by any public utility "shall be just and reasonable, and to the extent that the rates . . . may be unjust or unreasonable, [they] are prohibited and declared unlawful." The Arkansas Public Service Commission is vested with the sole and exclusive jurisdiction and authority to determine the rates to be charged by utilities. Ark. Code Ann. § 23-4-201(a) (1987). Further, the Commission has the responsibility, when faced with unreasonable rates, to fix reasonable ones. Ark. Code Ann. § 23-4-101(b) (1987). The Commission has some flexibility in establishing rates. For example, Arkansas Code Annotated section 23-4-108 (1987) permits the Commission to fix a sliding scale of rates, but it too must be just and reasonable. Also, the Commission may, in the telecommunications field, deviate from ordinary rate-of-return regulation, but only upon a showing that such deviation is in the public interest. *See* Ark. Code Ann. § 23-2-304(b) (Supp. 2001).

█ The question we are ultimately faced with on this point is whether the application of the parity order results in just and reasonable intrastate switched-access rates. The record is not developed sufficiently for us to decide this issue. The appellees claim that parity produces just and reasonable intrastate rates because those

rates correspond with the interstate rates established by the FCC. However, we do not have enough information regarding the manner in which the FCC establishes interstate rates. We know that the FCC groups companies with like costs into bands, but we have no data before us on what costs are considered by the FCC, nor do we know how CenturyTel's actual, company-specific costs compare with the average cost assigned to the band rate. Without that information, we cannot say whether the Commission has exercised its responsibility to see that just and reasonable rates are charged in the State of Arkansas.

▇ We vacate orders No. 15 and 16 and remand to the Commission.

HART, J., agrees.

ROBBINS and GRIFFEN, JJ., concur.

VAUGHT and BAKER, JJ., dissent.

W ENDELL L. GRIFFEN, Judge, concurring. I agree that the Public Service Commission's decision in this case, approving the assets sale (CA 00-855), and in the companion case, approving the rate increase (CA 00-1109), should be vacated and remanded. I write separately to encourage the parties to request rebriefing and further oral argument before this Court after the record has been supplemented with the parity order that, strangely, was not made part of the record by the Commission or by any of the parties to these appeals. As the principal opinions in these companion cases state, the record lacks a sufficient basis for us to determine whether the Commission's decisions, which hinged on the application of the parity order, was supported by substantial evidence.

The appeal in CA 00-855 is from Order No. 15, issued by the Commission on March 29, 2000. In this order, the Commission approved the joint application of Century Tel and General Telephone Electric (GTE) to purchase and sell, respectively, certain GTE assets and properties for $843,000,000. The Commission affirmed the finding of its Administrative Law Judge (ALJ), that the sale was consistent with the public interest pursuant to Arkansas Code Annotated section 23-3-102 (1987). The Commission also affirmed the ALJ's denial of a motion by Alltel Arkansas, Inc., AT&T, Sprint, and Southwestern Bell (SWB) to rescind the parity

order prescribing that intrastate access switching rates be the same as interstate access rates.[1] Alternatively, Alltel, AT&T, Sprint, and SWB sought a determination from the Commission that the parity order is inapplicable to the asset purchase and sale. The Commission denied that motion when it approved the asset purchase.

On appellate review, our task is to determine whether the Commission's determination that the asset sale and purchase was consistent with the public interest, pursuant to section 23-3-102, is supported by substantial evidence and was taken in regular pursuit of its authority. This review includes a determination of whether Order No. 15 violated any of appellants' rights under the United States Constitution or the Arkansas Constitution. *See* Ark. Code Ann. § 23-2-423(c)(3), (4) (Supp. 2001). We have often said that if an order of the Commission is supported by substantial evidence and is neither unjust, arbitrary, unreasonable, unlawful, or discriminatory, then we must affirm the Commission's action. *See Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*, 58 Ark. App. 145, 946 S.W.2d 730 (1997).

It is a basic principle of appellate review that the decision being reviewed must be accompanied by a sufficient record containing the evidence pertinent to that decision. *See Greene v. Pack*, 343 Ark. 97, 32 S.W.3d 482 (2000). That principle affects our appellate review of the instant appeal, as well as the appeal from the companion decision in this case. Although both decisions are explicitly dependent upon the Commission's application of the parity order, the order itself is not part of the record. Moreover, the record does not demonstrate the manner in which the order was adopted nor the parties to whom the order was intended to apply. Therefore, we have no way to intelligently conclude whether the Commission's application of the parity order is supported by substantial evidence. We do not know whether the order applies to adjudication involving the parties to the instant appeals or is limited to other parties. Nor do we know whether the parity order is perpetual or limited in its duration. We do not know whether the order resulted from a decision on the merits of a controversy or resulted from a settlement. If it is a settlement, we do not know who the settling parties were, let alone what their settlement has to do with the decisions now being appealed.

---

[1] Order No. 37 in Docket 83-042-U.

It follows, then, that we must vacate the Commission's decision in Order No. 15 approving the sale, remand the matter to the Commission, and direct the Commission to supplement the record by forwarding the parity order discussed so prominently in its order and in the briefs submitted by the parties to this appeal. I join the decision to vacate and remand for that purpose. I also venture to suggest that the parties may desire to petition our Court to rebrief the case and orally argue it afresh once we have reviewed the order that is so critical to the appeals.

KAREN R. BAKER, Judge, dissenting. I disagree with the majority's decision to vacate and remand the orders of the Public Service Commission. I believe we have sufficient information before us to decide the case on the merits and, if the merits were reached, I would affirm.

Numerous arguments are raised by the appellants in this appeal and the companion appeal, some twenty in all. I would affirm on all issues; however, I write to address what I believe is the crux of both appeals, *i.e.*, the Commission's decision to allow CenturyTel to use the parity order to establish intrastate switched access rates.

Despite the majority's concern about gaps in the development of the record, I believe we can glean enough information from the testimony and exhibits to reach the issues presented. The record shows that the parity order was entered in 1985 to implement certain policy considerations, among them, to lower intrastate access rates to the same level as interstate rates.[1] From the date of its implementation, all companies that filed intrastate switched access rates filed them as "parity filings," that is, they filed intrastate rates that simply mirrored the corresponding interstate rates. In 1997, however, most telecommunications companies chose alternative regulation, pursuant to Act 77 of 1997. As a result, they were no longer subject to the parity order. GTE, however, did not choose alternative regulation; it remained subject to the order as would its successor CenturyTel if this sale were approved. The appellants' primary argument on appeal is that, because of these changes in the regulatory environment and because of the unique situation in which an order that once had industry-wide application is now applicable to only one company, the Commission should not allow use of the parity order to establish intrastate access rates.

---

[1] I am disturbed by all parties' failure to include the parity order in the record, but I believe that the testimony at the hearing, which is abstracted, provides sufficient information regarding the relevant content of the order.

Appellants make some rather persuasive arguments on this point, but we cannot ignore the standard by which we review orders of the Public Service Commission. As the majority points out, the Commission has broad discretion in exercising its regulatory authority, and we may not pass upon the wisdom of the Commission's actions or say whether the Commission has appropriately exercised its discretion. *Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*, 58 Ark. App. 145, 946 S.W.2d 730 (1997). Further, the Commission's action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis. *Bryant v. Arkansas Pub. Serv. Comm'n*, 55 Ark. App. 125, 931 S.W.2d 795 (1996). In this case, the Commission might well have determined, as suggested by the PSC staff, that parity continued to be viable because it assured that like services would be charged at the same rate. That is a rational basis for the Commission's action, and, because that rational basis exists, we should affirm the Commission's decision. Further, I am hesitant, in the absence of clearly arbitrary decision-making, to direct the Commission to rescind one of its own orders.

I am also concerned that the majority opinion has branched into a realm that need not be visited in this case. Part of the majority's decision to remand is based on the idea that there is not sufficient evidence in the record to allow us to determine whether the parity order produces just and reasonable rates. I do not believe we need to go behind the parity order to determine whether it produces just and reasonable rates, *i.e.*, whether there is something inherently flawed about the parity order itself. The parity order, which was entered over fifteen years ago and has been in effect ever since, is not the order appealed from. The relevant inquiry is whether the Commission has regularly pursued its authority in continuing to apply one of its legitimately issued orders.

I am authorized to state that Judge VAUGHT joins me in this dissent.